## Irwin *against* Workman.

3 W 357
206 354

An attorney has no lien for his fees on money in the hands of a sheriff.

A sheriff, in an action for money in his hands, cannot set off a note given by the plaintiff to his attorney on the execution, and assigned by the attorney to the sheriff.

Nor can the sheriff protect himself by payment to such attorney with notice of the revocation of the attorney's authority.

His only defence would be to show that the attorney had acquired from the plaintiff an independent ownership of the money, and that he, the sheriff, stood in the attitude of a stakeholder.

Such an ownership cannot be raised upon an agreement between the plaintiff and a third person, that in case the latter should purchase at sheriff's sale the property in execution, the purchase money should be under the control of the attorney, and be applied as he might direct.

ERROR to the common pleas of *Alleghany* county.

This was an action of *assumpsit* brought by John H. Irwin, the plaintiff in error, to recover from Samuel Workman a sum of money in the hands of the latter as sheriff of Washington county. The plaintiff gave in evidence the record of a judgment for 653 dollars 49 cents, in No. 175 of November term, in the common pleas of Washington county, in which the executors of Jane Addison were plaintiffs, and John Hoge's administrators defendants, upon which judgment executions were issued, the real estate of John Hoge levied upon, sold, and the proceeds, amounting to 5000 dollars, came into the hands of Workman, then sheriff of that county. The plaintiff produced in evidence the record of another suit in the common pleas of Washington county, in which the said John H. Irwin and wife were plaintiffs, and the administrators of John Hoge defendants, in which judgment had been confessed for 5466 dollars 78 cents. It appearing that Hoge died intestate, and that the proceeds of the sale of his estate would not be sufficient to pay his debts, being chiefly simple contract debts, the court of common pleas of Washington county appointed auditors to marshal and appropriate the moneys in the hands of Workman, then sheriff, among the creditors *pro rata*. By the report of the auditors, confirmed by the court, it appeared that Irwin was entitled to receive a certain sum of money in the said sheriff's hands, the balance of which, now in controversy, the sheriff

[Irwin v. Workman.]

alleges was paid over to Thomas M'Giffin, as the attorney of John H. Irwin.

The defendant then gave in evidence a promissory note, in the following words :

"I feel willing to allow Thomas M'Giffin, Esq. 400 dollars for his services as my attorney generally in my business relative to a settlement with the estate of John Hoge, Esq. deceased ; provided he does not require payment until I am possessed of the funds arising from said estate ; and provided he continue to act as my attorney until such settlement is procured.

" John H. Irwin.

" April 4th, 1826."

" Cr. by 145 dollars, received through J. H. Ewing, Esq.

"Thomas M'Giffin."

Upon this there was an indorsement, not dated, by M'Giffin to Workman, as follows.

" Received by John H. Ewing, Esq. of Samuel Workman, late sheriff of Washington county, 255 dollars, part of the purchase money upon the sale of the tract of land or farm called the Meadow Lands, made to the said Ewing by the said Workman as sheriff aforesaid, as part of the estate of the late John Hoge deceased, at the suit of Addison's executors or administrators, which sum I acknowledge to have received as attorney of Dr John H. Irwin, one of the creditors of the said Hoge, and in satisfaction of the within engagement of the said Irwin.

"Thomas M'Giffin."

"255 dollars, and interest 21 dollars 3 cents, amounting to 276 dollars 3 cents.   Received of Samuel Workman, Esq. 276 dollars 3 cents.

"John H. Ewing."

The defendant also relied upon the following instrument to show that the plaintiff agreed that the money belonging to him in the defendant's hands should be paid to Thomas M'Giffin, Esq.

" In case I become the purchaser of the Meadow Land property, late the property of John Hoge deceased, I agree with Dr John H. Irwin that the purchase money shall be under the control of Thomas M'Giffin, Esq., his attorney, and that I will apply it in such manner as he may direct, so as not to make myself liable to any damages in consequence of the application.

" John H. Ewing.

" June 30th, 1826."

The plaintiff, to rebut the testimony thus offered by the defendant, gave in evidence the following receipt.

"August 20th, 1827.   Received of Dr John H. Irwin 145 dollars on account of his note to me, through John H. Ewing, embracing 40 dollars paid me by John H. Ewing, and his assumption for 105 dollars of January 4th, 1827.

" 145 dollars.

"Thomas M'Giffin."

[Irwin v. Workman.]

The plaintiff then gave in evidence the following notices.

" To the sheriff of Washington county, Pa.

" Sir—Take notice, that you are hereby forewarned from paying any money which comes into your hands by the sale of John Hoge, esquire's estate to any other person or any other claim than that of the heirs of Mrs Addison, until a settlement of said estate takes place.

" John H. Irwin.

" Washington, June 30th, 1826."

" To Samuel Workman, Esq.

" You are requested to retain all sums of money in your hand belonging to Dr J. H. Irwin, or to be appropriated to his judgment, until a special order for that purpose shall be given to you by Dr Irwin.

" G. Selden, Attorney for J. H. Irwin.

" Washington, June 30th, 1828."

C. S. Bradford, a witness on behalf of the plaintiff, then testified, that on or about the 14th of May 1828 he went to Washington, at the instance of Mr Selden, to have an auditor appointed to marshal and appropriate the assets arising from the sale of John Hoge's estate. He handed a letter from Irwin to Thomas M'Giffin, Esq., who appeared to be very much exasperated. Samuel Workman was present, and M'Giffin told him (Workman) that he (M'Giffin) was dismissed by Irwin.

George Selden, Esq. then testified, that he went to Washington on the business of Dr Irwin. It was impressed on his mind that when he spoke to Workman he had not paid over the money to Mr M'Giffin ; but there was some arrangement alleged by Workman as having been made. He (Workman) admitted distinctly the money had not been paid.

The court below was requested by the plaintiff's counsel to charge the jury :

1. That inasmuch as it appears by a notice dated the 30th of June 1826, given by John H. Irwin to Samuel Workman, also a notice given to the same by George Selden, Esq. as the attorney of Dr John H. Irwin, dated the 30th of June 1828, and if the jury believe the testimony of the papers and the witnesses examined upon the subject, that those notices were given to said Workman prior to the distribution of the funds in controversy, and also that said Workman knew of the discharge of Thomas M'Giffin, Esq. as the attorney of Dr Irwin, that then the defence set up by the said Workman, as to the payment of the money he alleges to have made to said M'Giffin, will not avail him, and that the plaintiff is entitled to a verdict.

2. That the note of John H. Irwin, dated the 4th of April 1826, to Thomas M'Giffin, Esq. for the sum of 400 dollars, is a conditional one ; that said money is not payable to said M'Giffin until the settlement of the business in which said M'Giffin was concerned as counsel for said Irwin, nor until said Irwin is possessed of the funds arising from the estate of the said Hoge. Inasmuch then as it ap-

pears by the testimony that the said M'Giffin did not continue as the
attorney of said Irwin until the close of the transactions alluded to,
and inasmuch as it appears that said Irwin is not yet possessed of
the funds arising out of the sale of the estate of John Hoge deceased,
the defendant cannot avail himself of the defence he sets up, and the
plaintiff is entitled to a verdict.

3. That inasmuch as the said M'Giffin has taken of the said Irwin
security for the payment of his just professional services, he has in
law waived his lien upon the money of his client, if in Pennsylvania
he have such a lien.

4. That the defendant is not entitled to interest on the 600 dol-
lars he alleges to have paid to John H. Irwin, inasmuch as it appears
that the sheriff was the stakeholder of the parties interested in the
funds, and the law will not allow him to speculate on the same by
loaning the money, and inasmuch as it appears by the report of the
auditors that the said Irwin was entitled to the same.

Charge of the court below (Shaler, president).

1. As to the plaintiff's first point, the facts therein alleged did not,
under the peculiar circumstances of the case, entitle the plaintiff to
recover.

2. As to the plaintiff's second point. It is true the note is condi-
tional as to the time of payment; but the true question is, whether
the discharge of M'Giffin by Irwin was not unauthorized and un-
warranted, and a weak pretence to get rid of the payment of the fee?
On this subject the jury will judge for themselves. It is unneces-
sary to enlarge upon the point, as, if the court are correct in one yet
to be made, the plaintiff is barred on other grounds.

3. We are requested to say to the jury, whether an attorney has
a lien for his reasonable compensation on the funds of his client in
his hands? To this I answer, that I have always looked upon him
in the light of any other agent, who, when he has the property of
his principal in his hands, is always entitled to payment before sur-
rendering it. I do not conceive that M'Giffin having taken the bond
with the conditions named prevented him from resorting to his lien.

4. On this point the opinion of the court is against the plaintiff.

The court then proceeded to charge the jury that the agreement
of John H. Ewing, which, as the plaintiff himself produced the re-
cord containing it, must be considered as the plaintiff's own act, and
of which, from the other facts of the record, the presumption was satis-
factory, was made with the assent of the plaintiff, and barred the
plaintiff's recovering from the sheriff, on the ground of his interference
with the duties of that officer; that this being the case, the jury
would be saved the trouble of investigating the other facts of the
case as applicable to the points made by the plaintiff's counsel, as
the verdict upon this ground alone must be for the defendant.

The following errors were assigned.

1. In the charge of the court upon the first, second, third and
fourth points proposed by the plaintiff's counsel.

[Irwin v. Workman.]

2. In charging the jury that a paper signed by John H. Ewing and returned with the record in this case, was the agreement of the plaintiff, and barred his recovery in the cause.

3. In withdrawing from the investigation and decision of the jury the facts of the cause as applicable to the points of plaintiff's counsel.

4. In withdrawing from the jury the decision of the question, whether the paper signed by J. H. Ewing was or was not the agreement of J. H. Irwin.

*Watts,* for plaintiff in error.

*Fetterman,* for defendant in error.

This action was brought to recover from the sheriff 270 dollars, part of the proceeds of the sale of the estate of John Hoge deceased, of whom the plaintiff was a judgment creditor. The voluminous testimony of record, produced on the trial, was all offered by the plaintiff, which itself proved the arduous professional services which had been rendered by Mr M'Giffin : but we offered still further testimony, and the depositions of T. M. T. M'Kennan, Esq. and others, to prove that Mr M'Giffin, who is the real defendant in the present case, had faithfully and zealously attended throughout the whole of the difficult and laborious transactions growing out of the plaintiff's business, until the balance due was ascertained by the auditors, and the money ready to be paid. After the first notice from Irwin to the sheriff, the attorney still continued to attend to the business. The meaning of that notice simply was, that the sheriff should retain the money in his hands until the estate should be finally settled. Is it likely that a highly honourable member of the profession, as the attorney was, should consent to remain employed a moment after such notice, if the object of it was to notify the sheriff to make no payments to him? In this case the attorney had a lien for his compensation on the money in the hands of the sheriff. Martin *v.* Hawks, 15 *Johns. Rep.* 405. A client has no right to dismiss an attorney to the extent of preventing payment to him by the sheriff. Payment must be made to the attorney on record. Weist *v.* Lee, 3 *Yeates* 47; 1 *Dunl. Pr.* 82, 83. With respect to the testimony of Mr Selden, *de mortuis nil nisi bonum;* or it might be said that it was given with great hesitation. The court below very justly considered the agreement between Irwin and Ewing as an interference with the sheriff's discharge of official duties : and is it not, moreover, a waiver and relinquishment of all claim by Irwin on the sheriff? Hartman *v.* Stahl, 2 *Penns. Rep.* 223. The notice from Selden to the sheriff was not given until the whole business was brought to a close and the condition of Irwin's note to M'Giffin performed. The attorney had faithfully complied with his contract; and shall we now sanction a trick to deprive him of the fruits of his labour?

III.——VV

[Irwin v. Workman.]

The opinion of the Court was delivered by

Gibson, C. J.—In Miles *v.* Richwine, 2 *Rawle* 199, a constable was not suffered to apply an execution in his hands to his own debt. It is certainly neither politic nor just, to put impediments in the way of execution creditors, or suffer an officer to obstruct them by a pretence of title to their moneys in his hands. An attorney has not a lien on money in the hands of another; and the transfer of a security for his fee, gives the sheriff no better right to retain it than he had before; for it is not to be endured that an executive agent of the law shall set off a debt even previously due him, much less purchase a title to money in his hands by the subsequent procurement of a cross demand, which could not have been procured for purposes of defalcation by the original debtor. To relax the direct responsibility of the officer, in a case like this, would let in a flood of vexation and oppression. The defendant, therefore, could not protect himself by becoming the holder of the plaintiff's note.

Neither can he protect himself by payment over to the plaintiff's attorney, with notice of the revocation of his authority. Where an authority is not coupled with an interest in the thing to be recovered, the right to revoke, with or without cause, is as indisputable in relation to its existence between an attorney and his client, as it is in any other case of delegated power. It is not for a sheriff to interpose further than to ascertain whether the authority incidental to the relation has been restricted or revoked. As regards receiving, it was certainly restricted in this instance by an explicit direction to pay but to the special order of the client, and subsequently revoked by a dismission of the attorney. With notice of this, the sheriff could avoid the consequences of a mispayment but by showing the attorney had acquired an independent ownership of the money paid to him, and that he himself stood in the attitude of a stakeholder. Now then, for the agreement from which this ownership is said to proceed. Taking the paper signed by Mr Ewing to be obligatory on Doctor Irwin, I am unable to give it the effect ascribed to it at the argument. It is in these words: "In case I become the purchaser of the Meadow Lands, late the property of John Hogè, I agree with Doctor John H. Irwin that the purchase money shall be *under the control* of Thomas M'Giffin, Esq., his attorney; and that I will apply it in such manner as he may direct, so as *not to* make myself liable for any damages in consequence of the application." Does that import an agreement to give Mr M'Giffin a particular interest of his own, or even a right of control, to be exercised under any pretext, adversely to the interest of his client? It was given to him expressly as an attorney, and necessarily ceased with his general authority as such. The agreement was made for the advantage of the client; and the attempt of the attorney to take a benefit by it at the expense of his client, is inconsistent with the object, which was evidently to guard against payment over to the other simple contract creditors: a precaution of little value, as no agreement with the pur-

[Irwin v. Workman.]

chasers could divest the money from its legal course, or impair the rights of the parties ultimately entitled to it. But taking all this to be otherwise, was the agreement intended for the case that has been produced by payment of the purchase money into the hands of the sheriff, and the consequent divesture of Mr Ewing's power, if he ever had the right, to direct the application of it? The receipt of it by the sheriff, in point of law, is conclusively established by his return; and his receipt of it, in point of fact, is satisfactorily established by Mr Ewing's written acknowledgement of the restoration of it to him, evidently with a view to bring it again within the terms of the agreement, and give colour to the payment of it over to Mr M'Giffin. That, however, was impossible. The contingency provided for had happened; Mr Ewing could not apply the purchase money in the manner stipulated, without subjecting himself to an action; it was paid into the hands of the sheriff, who alone was entitled to receive it; and the agreement was at an end. Being so, it could be renewed but with the assent of the original parties, which is not pretended to have been obtained. After that, and after notice of the revocation of the attorney's authority, payment over to him was indefensible. I impute no impropriety to any one. Believing himself to be unhandsomely used, and perhaps believing it truly, the attorney might with good conscience lay hold on any thing which promised him a legal advantage. Subject to an inquiry into the performance of the consideration, he may still have recourse to the plaintiff on his note; but consistently with the principles indicated, an inquiry into the merits of his professional services would be out of place in an action against the sheriff. It would, therefore, seem that the agreement, and the transactions consequent on it, were not sufficient to prevent a recovery.

Judgment reversed, and a *venire facias de novo* awarded.