## Oscar J. E. Stewart *v.* John H. Flowers et al.

1. Liens.—Possession, actual or constructive, or the right of possession, on the part of a person asserting a lien, is necessary to the existence of a lien.

2. Liens of attorney and solicitors for fees.—The lien of attorneys and solicitors on judgments and decrees obtained by them for fees, is based mainly on possession of such judgments or decrees, but partially, also, on the merit and value of their services.

VOL. II—33

3. SAME.—The lien of attorneys and solicitors on judgments and decrees obtained by them is recognized as being firmly engrafted on the common law, and one of the family of implied liens.

4. SAME.—It exists upon the money, papers, deeds, and writings of the client in the attorney's hands, and upon judgments and their fruits and incidents.

5. SAME.—This doctrine, with its various limitations, conditions, and incidents, illustrated by reference to authorities.

6. SAME—CASE AT BAR.—But where a solicitor commenced proceedings and devoted much labor and time and some expense of money in their prosecution, without express agreement as to his fees, and then, after repeated and fruitless solicitations for compensation, abandoned the cause, and the cause was afterwards successfully prosecuted by another solicitor, and the fruits of the suit, which were lands, were sold to strangers, no lien on the purchase money exists in favor of the first solicitor for his fees.

Appeal from the chancery court of Pike county. MILL-SAPS, J.

The appellant assigned the following errors:

The court below erred in sustaining the demurrer to the original bill.

*D. W. Hurst*, for the appellant.

The right of the attorney to his lien on the particular fund received, or subject of the suit sustained, the decree or judgment, is well established. 3 Parsons on Con., 269, and authorities in notes; Andrews v. Nurse, 12 Conn., 444; Pope v. Armstrong, 3 S. & M., 214, 223. The case here, is a demurrer sustained to a bill by the attorney and solicitor to enforce a lien for his fees, etc., in a chancery suit to obtain certain lands out of which the client had been cheated. The suit was successful.

*S. E. Packwood*, for the appellee,

Contended that there was no equity in the bill, and hence, its dismissal was right. If the appellant would have acquired any lien upon any money or property recovered for his client, upon final determination of his case, he had forfeited it by abandoning the case as counsel, and refusing to prosecute it any further. The suit which the appellant was prosecuting for the appellee, was in the chancery court, and while it was proceeding and undetermined, the lot of ground which was the subject of the suit, was sold by order of the

probate court, and now the money due for this lot, is sought to be reached by the appellant in this suit, to satisfy his claim for counsel fee. It is insisted there is no lien existing upon said fund in favor of the appellant.

There is no statutory lien in this state, in favor of attorneys and solicitors, to secure payment of their fees. At common law, it is contended that the appellant acquired no lien in this case. The general principle of all liens is, that where there is no possession, there is no lien. Smith's Mercantile Law, 697; McFarland v. Wheeler, 26 Wend., 473.

The suit was not determined, and there is no allegation in the bill that the fees of counsel were to be paid before the suit was ended; and hence, no cause of action existed. Such fees are only payable upon completion of the services, unless there be some special agreement to the contrary. 11 S. & M., 190.

Tarbell, J.:

This case involves the law of the lien of attorneys and solicitors.

In 1869, Oscar J. E. Stewart, filed his bill of complaint in the chancery court of Pike county, against John H. Flowers and Gabriel, Margaret, Henry, Ann Maria, Susannah, and Nancy Flowers, and William Cotton, setting forth in substance:

That complainant is a solicitor in chancery—that as such solicitor, he was employed by John H. Flowers, in 1859, to prosecute a suit for him, against John D. Farnham, Edmund M. Foster, and Branch Foster, to set aside for fraud, a deed of a certain described lot of land occupied by Flowers, upon grounds fully set out in the bill, the success of which would vest or reinvest the title of the land in Flowers or his children ; that he filed the bill as thus employed, making the children of the deceased wife of said Flowers, his co-complainants ; that he devoted considerable time and money in the prosecution of said suit, obtaining injunctions, etc.; that the suit was substantially suspended from the breaking out

to the close of the war, when complainant called upon Flowers for an advance of money in part compensation for services rendered in said suit; that Flowers admitted the request to be reasonable, but replied that the war had left him, as it had others, without money, but that he expected shortly to be able to hand the complainant fifty dollars, which, however, he neglected to do; that the complainant continued to attend the suit, occasianally reminding Flowers of his neglect, until some time in 1866, when he finally and wholly withdrew from the cause, of which he gave Flowers notice in writing, stating his reasons, viz.: the pressure of other professional business, and the neglect of Flowers to advance anything in the way compensation; that the land for which that suit was prosecuted, was the only property of Flowers and his children, and which, having secured the same, by the aid of another solicitor than complainant, he had contracted to sell to defendant, William Cotton, for $2,000, and had solicited the aid of the probate court of Pike county, in making title to said Cotton. The complainant claims and demands two hundred dollars for his services in said suit, and alleges valuable services therein to Flowers and his children. An injunction was issued restraining Cotton and others from paying over to Flowers $250, and the complainant prayed the interposition of a court of equity in aid of his claim.

At the September term, 1869, of the chancery court of Pike county, the defendants, John H. Flowers and Gabriel Flowers, demurred to the bill, in substance, on the following grounds, viz.: 1st. Want of equity on the face of the bill; 2d. Because the bill does not aver that the original contract was, that the fee of complainant should be paid as the suit progressed—nor that the complainant was to be paid before final adjudication of the suit; 3d. That it is not averred that Flowers positively promised to pay a portion of the fees of his solicitor before the suit was determined, but that it is only averred that Flowers stated he expected to be able to do so; 4th. That it is not shown by the bill that Stewart ren-

dered any valuable services, but that the title to the land involved remained in the same unsettled condition as when the cause was undertaken by complainant.

The court sustained the demurrer, and dismissed the bill, from which the complainant, Stewart, appeals to this court, and this action of the court below constitutes the only assignment of error.

To present, if possible, more distinctly, the basis of this case, we repeat briefly, that the contract alleged in the bill is without a stipulated price, or time of payment, and that the solicitor during the progress of the suit withdrew therefrom, the cause having been prosecuted to a conclusion by another solicitor. The land in that controversy having been secured by the complainants therein, was sold by them to a third party, apparently on credit. The solicitor thus withdrawing, now asks to be decreed the payment of a reasonable sum out of the said purchase money, as a compensation for his services as solicitor. The possession by the solicitor of papers, writings, deeds, or money belonging to defendants, actual or constructive, is not alleged, nor is a judgment in their favor for the collection of money over which the solicitor has any control, set forth.

We have considered this case imbued with a desire to encourage and protect a profession, which, in its perfection, embraces the learning of all; the perfect lawyer, being master of the whole range of human knowledge.

In the course of our investigations we have consulted every adjudged case upon the lien of attorneys and solicitors in this country and Great Britain, as well as all the text writers. This lien as applied to papers, writings, notes, money, funds, estates and judgments, is clearly defined, and the rules in their various phases, as affected by the facts of each particular case, are well understood.

To the extent of the established practice, we give our assent both upon conviction of the justice of this lien and upon precedent. "Lien" is defined to be "a right by the possessor of property to hold it for the satisfaction of some demand."

As stated in Edwards on Bailments, 386, " the rule is, that every bailee for hire, who, by his labor and skill, has imparted an additional value to the goods, has a lien upon the property for his reasonable charges; this includes all such manufacturers, mechanics, tradesmen, and laborers as receive property for the purpose of repairing or otherwise improving its condition." So of agents, factors, etc.

In Anderson v. the State, 23 Miss., 459, a " lien" was defined to be a " qualified right which, in a given case, may be exercised over the property of another," and it was declared that it " attaches to the subjects of property and follows them in their transmission to others." As a corrollary it follows that this lien secures " priority of payment" and preference in the appropriation of the proceeds of the property.

Webster defines " lien" to be " a legal claim; the right by which the possessor of property holds it against the owner in satisfaction of a demand."

Possession, therefore, actual or implied, or the right to the possession of property, is essential to a lien.

The lien of attorneys and solicitors is based mainly upon the theory of possession, but partially, also, by reason of meritorious and valuable services, though it has been wisely said, that " the lien which an attorney is said to have is merely a claim to an equitable interference of the court to have that judgment held as security for his debt;" 12 Mees. & W., 451; 37 Eng. Law and Eq., 470; and "is sustained on principles of justice and equity." Sweet v. Bartlett, 4 Sandf., 661.

It has been held in Massachusetts, the decisions of whose courts command the highest consideration, that " no lien in favor of an attorney or solicitor exists at common law." 5 Mass., 309; 11 ib., 236; 13 ib., 525.

We concede, however, that the doctrine has been incorporated into the legal jurisprudence of this country, and the rules as established by adjudged cases constitute the law of the case at bar.

The origin, growth and adoption of a lien, for the protection of attorneys, would be an interesting inquiry in this connection, but suffice it to say, that the doctrine became established about the time of Lord Mansfield, and we regard it as a fixed principle, firmly engrafted upon the common law, though the practice and the decisions in Great Britain, and in this country, are in some respects widely different, and in fact conflicting.

Regarded as belonging to the family of implied liens, and likened to the English doctrine of equitable mortgages, or constructive trusts, not inappropriately characterized as a " secret equity, " the lien of attorneys has not been favored in some of the states, and it is believed that its extension beyond established usage, would be contrary to the spirit of our institutions.

Without changing, modifying, or disavowing existing rules, or creating new ones, we only propose in this instance to determine whether the facts stated in the bill present an application within the adjudicated cases.

Quoting only primary propositions will be sufficient for our present purpose.

1st. To assist an attorney in recovering his cost, he has a lien for the amount of his bill, upon the deeds, papers, and writings of his client, which come to his hands in the course of his professional employment. 1 Tidd's Pr., 337; 1 Lib. P. R., 142; 3 Durnf. & E., 275; 1 Maule & Sel., 535; 2 Barn. & Cres., 616; 4 Dowl. & Ryl., 125; S. C.; 6 ib., 384; 4 Taunt., 807; 2 Scho. & Lef., 279; 13 Ves., 161, 162; 16 Ves., 258, 275; 18 Ves., 282, 294; 14 Ga., 89. *Vide,* also, 1 Tidd's Pr., 85, 86, 87. He has a lien on his client's papers in his possession, but not on anything belonging to his client, till it is in his possession. 12 Wend., 261.

In Pennsylvania, however, the English rule is changed. Walton v. Dickson, 7 Barr., 378. *Vide,* also, 1 Cal., 18 Mo., 10 Ind. A lien upon deeds is not a lien upon lands. Cross, 156. Lien upon lease. 1 M. & S., 535.

2d. An attorney has also a lien on the money recovered by

his client, for his bill of costs.   If the money come to his hands, he may retain it to the amount of his bill; he may stop it *in transitu*, if he can lay hold of it; if he apply to the court, they will prevent its being paid over till his demand be satisfied.   Doug., 104; 1 H. Black., 123; 3 Atk., 720; 4 Durn. & E., 124; 2 P. Wm., 460; 2 Ves., 25; 2 St., 1126; 3 Bur., 1313; 8 Moore, 229; 1 Bing, N. C., 277.

3d. An attorney has also a lien upon a sum awarded his client by arbitrators, as well as if recovered by judgment. 1 Tidd, 338; 1 East, 464; 2 Rosc., 237; 1 Wend., 49; Hutchinson v. Howard, 15 Vt., 544.

4th. Also upon notes left with him for collection.   11 N. H., 163; 11 Mass., 237; 3 S. & M., 214, 223.

5th. And upon a "fund."   Lane v. Church, 4 Mad., 207, 391; Hall v. Laver, 1 Hare, 751; Burge v. Britton, 3 ib., 373; 38 Penn. Stat., 234; 1 J. Ch., 22.

6th. It has been allowed upon an "estate" in case of a lunatic.   Barnesby v. Powell, Ambl., 102; *ex parte* Price, 2 Ves.; but in 38 Pa. S., 234, and 1 J. Ch., 22, the "estate" was treated as a fund in charge of the court.

7th. Of the lien of attorneys and solicitors upon judgments.   *Vide*, 1 Tidd's Pr., 337, note; Graham's Pr.; 8 J. R., 357; 3 Caines, 165; 10 Wend., 617; 15 J. R., 405; 1 Cow., 172; 4 Barb., 47; 6 J. Ch., 317; 50 Me., 231; 19 How. Pr., 91; 3 Watts, 357; 7 Barr, 476; 2 Ark., 162; 5 Day, 163; 9 Shep., 318.

But it has been held that this lien, except as to costs, does not extend to clients' money or damages recovered before the same comes to the possession of the attorney.   12 Wend., 261.. Nor does it attach until judgment. Ib.   But will be protected by the court. 2 Wallace, jr., 453, in *ex parte*, Plitte; 4 Cow., 416; 50 Me., 231; Petter v. Mays, 3 Greenl., 34; Hobson v. Watson, 4 Red., 20; Getchell v. Clark, 5 Mass., 309; Foot v. Pewksbury, 2 Vt., 97; the People v. Hardenburg, 8 J. R., 435; Grant v. Hazeltine, 2 N. H., 541; Lake v. Jugham, 3 Vt., 149; Heart v. Chipman, 2 Aik., 162.   In Maine and Massachuesetts, the attorney's lien on judgments

is regulated by statute. 11 Mass., 236; 9 Shep., 318; 3 Greenl., 34; 17 Shep., 152.

In Irwin v. Workman, 3 Watts, 357, and Walton v. Dickerson, 7 Bar., 376, it was held that an attorney has no lien for his fees on money in the hands of a sheriff, and in Runnells v. Huntington, 5 Day, 163, and Francis v. Rand, 7 Conn., 221, that his lien on a judgment, cannot vary or effect the rights of a stranger; though in 15 J. R., 405, the attorney's lien was put upon the footing of an assignee of a judgment. Papers, notes, money, funds, estates, awards, and judgments are, therefore, the primary, or substantive subjects upon which the lien of attorneys and solicitors is allowed to attach, and around these, revolve all other propositions or rules, as ancillary thereto, or as qualifications, and exceptions.

In Turner v. Gibson, 3 Atk., 719, the lien was held to extend to the "duty decreed;" but the "duty" decreed was the payment of money to an administrator by the aid of the solicitor. So the lien upon a judgment is also upon its fruits, but its "fruits" are the money's to be collected. 6 J. R., 456; 4 ib., 123; 1 East, 464.

And upon its securities, and incidents—these "securities" and "incidents" being the sources and means of its collection and enforcement; 12 Abbott's Pr. R., 325; the attorney being regarded as the equitable assignee of the judgment, with the right to the same remedial processes as his client, to obtain satisfaction to the amount of his lien. 50 Me., 231.

In the case of Read v. Dupper, 6 P. R., 361, Lord Kenyon said the principle had been settled long ago, that " the party should not run away with the fruits of the cause, without satisfying the legal demands of his attorney, by whose industry and expense those fruits were obtained;" but this was a simple case of a lien upon a judgment, with notice, likened to the assignment of a chose in action, followed with approval, in 15 J. R., 407.

In the case of McDowell v. Second Av. R. R. Co., 4 N. Y., 670, it was substantially held that " an attorney has no lien upon the subject matter of an action, prior to judgment;

but that the lien of an attorney, upon a judgment, is established;" *contra*, however, 12 Abbott's Pr. R., 325, lien upon claim itself, and 19 How. Pr. R., 153.

In Lorillard v. Robinson et al., 2 Paige Ch. R., 276, the chancellor said: " If the solicitor has no money of the client in his hands, and there is no fund in court on which he has a lien for his costs, he may go before the proper taxing officer and get his costs taxed, and then proceed at law thereon. Or, he may bring his suit without taxation, at his election, leaving the client to make an application on his part, if he wishes a taxation of the costs."

The chancellor, in the matter of Southwick, elsewhere referred to, said: " The court does not ordinarily, and, of course, interfere, to compel the payment of solicitor's fees; " and that " the solicitor has his remedy by suit, for fees in this as in other cases."

We are referred by counsel for appellant, 1st, to 3 Parsons on Contracts, 269, and authorities in notes to the text; 2d, to 12 Conn., 444; and 3d, to 3 S. & M., 214, 223, as conclusive of their view. These are accredited authorities, and the law as propounded therein would govern this court in any case to which the rules stated might be made applicable by the facts and circumstances.

We quote 3 Parsons on Contracts, 269, with the cases cited in the notes: " An attorney's lien for his costs extends to all papers and money of his client, which come into his hands in the particular cause, or on the particular occasion in which his demand arises, or not.   Stevenson v. Blakelock, 1 S. & M., 535; St. John v. Diffendorf, 12 Wend., 261; Bennett v. Cutts, 11 N. H., 163; Cage v. Wilkinson, 3 S. & M., 214; Walker v. Sargent, 14 Vt., 247; Christy v. Douglas, Wright, 485; Reed v. Bostwick, 6 Humph., 321; McDonald v. Napier, 41 Miss., 79; Kinsey v. Stewart, 14 Tex., 451.

"But it is only when he has in his possession the instrument on which his clients' right to the money paid into court rests, that he has a right of general lien on the fund recovered. Lann v. Church, 4 Mad., 301.   He has also a lien upon judg-

ments obtained for his client and the courts grant an order to stop the client from receiving the money recovered; Welsh v. Hole, Doug., 238; Wilkins v. Carmichael, ib., 104; Bradt v. Koon, 4 Cow., 416; *ex parte* Plitte, 2 Wallace, jr., 453; Fowler v. Morrill, 8 Tex., 153; Young v. Dearborn, 7 Fost. (N. H.), 324; Creighton v. Ingersoll, 20 Barb., 541; Collins v. Hathaway, Olcott, admr., 176; Hough v. Edwards, 37 Eng. L. & Eq., 470; until the money is paid. And if the defendant's attorney pay the amount of a judgment to the plaintiff, after notice from the attorney of the latter not to do so, because his bill is not satisfied, he will be liable to the plaintiff's attorney for the amounnt of his lien for bill, against the plaintiff. Welsh v. Hole, Doug., 239; Swain v. Senet, 2 B. & A., 99; Power v. Kent, 1 Cow., 172; Ward v. Wadsworth, 1 E. D. Smith. But the lien on the cause for his fees does not attach until the judgment is entered. Therefore, where in a case reserved, after the opinion of the court was pronounced in favor of the plaintiff, he forthwith assigned his interest in the judgment, and the defendant during the term, and before the judgment was actually entered, paid the whole amount to the assignee; it was held that the attorney's lien was thereby defeated. Potter v. Mays, 3 Greenl., 34., Getschell v. Clark, 5 Mass., 309; Foot v. Tewksburg, 2 Vt., 97; Hutchinson v. Potter, 18 ib., 614; Sweet v. Bartlett, 4 Sandf. (S. C.), 661. He has also a lien on money levied by a sheriff under an execution, and is entitled to have it paid over to him, notwithstanding notice to the officer to retain it, and of a motion to set aside the judgment for irregularity. Griffin v. Eyles, 1 H. Bl., 1227; but *contra*, 3 Watts, 357, and 7 Barr., 376.

The doctrine of 12 Conn., 444, is simply this: "That the attorney of a judgment creditor, has a lien upon the judgment and execution as against the debtor, with notice, for his services," etc. "Which courts of law and equity will protect, subject to the equitable rights of others." The court observed: "We do not say, nor do we believe, that attorneys in any case have a lien upon the judgments and papers

of their clients similar to that which manufacturers and others have upon goods and money in their hands. We only say, that they have, in certain cases, of which this is one, such a claim upon them as courts of law and equity will protect and enforce until their lawful fees and disbursements are paid, subject to the equitable rights of others. This claim which is generally denominated a lien, has long been recognized by the English courts of law and equity."

The case of Pope v. Armstrong, 3 S. & M., 214, arose on motion to compel the attorneys to pay over money in their hands, collected for their client, and it was held that an attorney at law has a lien on money which he has collected, for the amount due in the particular case, but not for any general balance, etc. The court stated the question for determination to be, whether an attorney has a lien upon money which he has collected, for a general balance due him, or whether such lien is confined to the amount due in the particular case, etc.; and in the course of the opinion, held that a distinction is taken between a lien on the fund recovered and a lien on papers in the hands of an attorney—the latter being regarded as more extensive. 3 S. & M., 223, was a similar case disposed of in the same manner as the foregoing.

It will be observed that the case under consideration is far removed from the propositions of these authorities. If the land reinvested in defendants were still in their hands, as at the termination of the original action, and this an application for a lien thereon, for the security of the solicitor's services, the claim of complainant would be stronger, if possible, than at present. In this aspect, also, the authorities are opposed to the lien. Smalley et al. v. Clark et al., 22 Vt., 598, was an attempt to extend a solicitor's lien to real estate, in which the court say : " This is the first instance that I am aware of, in which it has been attempted to extend the attorney's lien, as in this case."

In the case of Russell v. Russell, 1 Brown's Ch. C., 269, Lord Thurlow introduced the doctrine of equitable mortgages by means of the deposit of title deeds; and though the

decision in that case has since been followed in England, yet universally regretted, as being at variance with the statute of frauds, and as leading to discussions upon the truth and probability of evidence which it was the object of the statute to exclude.    I am not aware that our courts have ever been called upon to introduce the English chancery doctrine of equitable mortgages, and it may well be questioned whether they will do it if called upon.

The subject has also been before the courts of our sister state of Arkansas, reported in 20 Ark., 667, in many respects like the case at bar, wherein it is stated that the solicitor, having successfully prosecuted the case through the state and federal courts, asked that he might be declared to have a lien for his services upon the lands recovered, the defendants being without other property.    The chancellor sustained his claim to a lien and decreed a sale of the lands, but the supreme court reversed the decision of the chancellor, and declared that " to hold that the solicitor's lien attached to the land recovered would be introductory of a new principle, and an extension of the doctrine of the solicitor's lien beyond any adjudicated case, and would, in effect, be to create an equitable mortgage, which would be exposed to all the objections that have, or can be made to the doctrine of equitable mortgages in England, and even more under our registry system, without having the same plausible ground to stand upon, which is the presumed agreement to execute a legal mortgage."

The doctrine contended for by the counsel for appellant was apparently more nearly approached in two or three of the earlier English cases than in any of a later date of which we have any information.

In Barnsby v. Powell, Ambl., 102, the petitioner, solicitor for a lunatic, asked to have his claim declared a lien upon the estate of the lunatic.    The chancellor refused the application in the form presented, but allowed the solicitor to stand in the place of the committee, and thus to hold a lien upon the estate for his fees and disbursements.    We think

the case can, by no means, be considered other than exceptional, and a precedent only in case of a lunatic, though the chancellor observed, " that if a solicitor prosecutes to a decree he has a lien upon the estate recovered in the hands of the person recovering, for his bills," etc. ; but as the rule thus broadly stated 'has never been cited to sustain new and unusual cases, we are bound to presume it was limited by the peculiarities of the case before him. *Ex parte* Price, 2 Ves., 407, was also an application by a solicitor for a lien upon the estate of a lunatic. Of these two cases the chancellor, in the matter of Southwick, a lunatic, 1 Johns. Ch. R., 22, wherein the solicitor applied to the court for a decree that he be declared to have a lien on the estate, or funds of the lunatic, for his services in prosecuting a commission of lunacy, makes the following satisfactory explanations : " In certain cases such interference may be requisite, as where the committee becomes insolvent, and the costs would be lost unless made a charge upon the fund. Such was the case *ex parte* Price, 2 Ves., 407, and in the case, also, of Barnsby v. Powell, Amb., 102, the chancellor declared that the solicitor should stand in the place of the committee so far as to enjoy the benefit of the committee's lien on the estate as to the costs of a suit prosecuted for .the lunatic. The solicitor has his remedy by suit for fees in this, as in other cases. If the committee was before the court asking a settlement of his trust, and to be discharged from his responsibility and from the bond which the court had taken, the court would, undoubtedly require these costs and charges to be previously paid. Here are no special reasons assigned for this summary aid of the court, and the solicitor must be left to his ordinary remedy.

If the right of an attorney or solicitor to a lien upon real estate is not involved in this case, then the parties hereto occupy the ordinary relation of debtor and creditor only, and the remarks of the chancellor in Wiggins et al. v. Armstrong et al., 2 J. Ch., 145, are in point :

"My first impressions were in favor of the plaintiffs, but upon

examination of the cases, I am satisfied that a creditor at large, and before judgment and execution, cannot be entitled to the interference which has been granted in this case. In Angel v. Draper, 1 Vern., 399, and Shirley v. Watts, 3 Atk., 200, it was held, that the creditor must have completed his title at law by judgment and execution before he can question the disposition of the debtor's property; and in Bennet v. Musgrave, 2 Ves., 51, and in a case before Lord Nottingham, cited in Balch v. Westall, 1 Wens., 445, the same doctrine was declared, and so it is understood by the elementary writers. Whitford, 115; Cooper's Eq. Pl., 149. The reason of the rule seems to be, that until the creditor has established his title, he has no right to interfere, and it would lead to an unnecessary and perhaps a fruitless and oppressive interruption of the exercise of the debtor's rights."

The doctrine in Missouri upon the subject under consideration, is thus stated in Frissell & Johnson v. Haile, 18, Mo., 18: "Attorneys and counsellors at law in Missouri, are not to be confounded with the mere attorney and solicitor in England. These last are recognized officers of the court, and are entitled to fees for the services performed by them in the same manner as the clerks of our courts of record. * * * Attorneys at law, in our courts, are allowed no fees which are taxed as costs. They look to contracts made with their clients for remuneration for their services. If they receive the money of those who employ them, they may retain their fees just as any other bailee may retain for services rendered in the care of the subject of the bailment. Hence, the learning in the English books in relation to the liens of attorneys has no application, or an extremely limited one, under our system of laws."

The doctrine of attorneys' liens is thus referred to by the court in 38 Penn., State R., 231: "In a certain sense an attorney has been said to have a lien for his fees upon the money or papers of his client while they are in his hands. He may deduct from money collected by him a just compensation for collecting it, and need only pay over the balance;

this, however, is a right to defalcate, rather than lien. So he' may retain papers entrusted to him, until he has been paid for services rendered in regard to them; but possession is indispensable to his lien as much as it is to the lien of an ordinary factor or bailee. The attorney has no title to the judgment which he secures, or to the mortgage which he is instrumental in obtaining."

A case was determined in the supreme court of Georgia, in 1853, from which we quote the conclusions as the result of evidently thorough research, the same being in part quoted with approval in a leading case in New York : "Thus we see that attorneys here are the attorneys and advocates of the common law ; and so far as our condition and the character of our institutions will admit, an attorney becomes, by admission to the bar, entitled to the privileges which belong to the different grades of the profession in England. He is entitled, therefore, to the liens which exist in common law, in favor of Attorneys.

" Certain things in relation to the attorney's lien, are to be considered as settled in England. And first, it is settled that he has a general lien for the amount of his bill upon the deeds, papers, and writings of his client which come to his hands in the course of his professional employment, although his demand does not arise from services in relation to those papers. Until this bill be paid, the court will not order them to be delivered up.

" He also has a special lien upon the money of his client, which may come into his hands, and upon a judgment procured by him for his client. If the money is in his hands, he may retain it in satisfaction of his bill; and if in the hands of the officers of the court, the court in the exercise of its equitable power, I mean a court of law, will lay hold of it, and prevent its payment over until his lien is satisfied.

" If the defendant pays to the plaintiff the debt and costs due on a judgment, after notice from the attorney of the plaintiff, not to do so, he will pay it in his own wrong, and is liable to pay to the attorney his fee, notwithstanding.

" A settlement between the parties, with a view to defraud the attorney out of his fee, will not discharge the defendant from liability to pay them, or extinguish the judgment as to them, even without notice ; yet, if the parties without notice, *bona fide* settle or compromise the debt and costs, the attorney cannot afterwards proceed against the defendant for his costs.

" And in case of a collusive settlement of a cause, the attorney may proceed in the cause for the mere purpose of obtaining his costs.

" The lien on the money of a client is limited to the bill of costs accruing to the attorney or solicitor in the case in which it is raised, and the lien on a judgment is in like manner restricted. An execution issued upon a valid judgment in the hands of the attorney is a paper belonging to the client, upon which a lien for a general balance will attach as well as upon any other paper. At the same time it is to be noted, that the security which the execution gives for fees, is not the mere right of detention until they are paid, but a process available for the collection out of the defendant. I do not see why it should not be detained as against the plaintiff for a general balance, whilst it is clear that in case of a settlement by the defendant, with notice, or without it collusively, the judgment cannot be enforced against him for more than the fees due in the particular case. It is important too, that in reference to the lien of the attorney on the judgment, his power over it should be well understood. Because he has the lien stated, it is not to be understood that it supercedes all control which the plaintiff has over it, and that the attorney as *dominus litis* can " marshal the proceedings on the judgment or execution as he may think fit. " The lien amounts to this : that he has a right to control it for the collection of fees through an order of the court directing its use for that purpose in the exercise of an equitable power which appertains to it over its own process, and over the lien of its officers. * * *ᴸ * Barker v. St. Quenlin, 12 Meeson & Welsby, 440; 5 Taunton, 429.

And the court continues:

" Here, then, are the true grounds. Attorneys and solicitors are upon the footing of creditors, and their lien is upon the footing of securities. And there is no difference between the lien of attorneys and solicitors, and the lien of any other persons. Their liens are upon the footing of factors and other agents' liens. And as these hold liens not only for charges and disbursements, but also for compensation, either fixed by the usage of trade or by agreement, so also have attorneys and solicitors liens for their compensation, whether that compensation be settled by the law in the form of costs, or be agreed upon by the parties, or determined by the established usage of the profession."

In *ex parte* Kyle, 1 Cal., 331, the court say: " In this state we have no statute giving costs to attorneys, and they must consequently recover for their services in the ordinary mode." So in Indiana.

As we are examining, and shall dispose of this case upon its merits, the special causes of demurrer need not be discussed. A few of the cases, however, bearing upon those minor questions, may be noted without discussion.    1. Lien of attorney and solicitor, as affected by withdrawal, substitution, dismissal, etc.    *Vide*, Irving v. Viana, 2 G. & J., 70; Colgrave v. Manly, T. & R., 400; 2 L. J. Ch., 39; Commander v. Carrolton, 15 La., An. R., 7; 20 Barb., 541; Baid v. Ratcliff, 10 Tex., 81; White. v. Harlow, 5 Gray (Mass.), 463; Myers v. Crocket, 14 Tex., 257; Hawks v. Cottrell, 3 Hurl & Nor., 243; 2 Kent, 835, [641], note *c*; 836, note *a*.; Ranson v. Earle, 1 Mo. & Mal., 538; Vansandew v. Brown, 9 Bing., 402; Hoby v. Buitt, 3 B. & Adolph., 350; Newton v. Harlan, 4 Scott, N. R., 769; Gregory v. Cresswell, 14 Law J. N. S. Vol. 6, 300; Creswell v. Byron, 14 Ves. jr., 271; 8 Cow., 253; Chit. on Con., 446, and cases; 2 Moore & S., 543; 2 Parsons, 56; 9 Bing., 402, S. C.; Crawford v. Wallace, 2 Ala., 790; 12 Wend., 261; 15 J. R., 405; 6 ib., 296; 7 Pick., 137; Cross on Liens, 149–158; Mordecai v. Soloman, Say. R., 173; Ch. Eq. Dig., 2773; Mengee v. Roderiquez, 1 Price, 92; 14 Ves., 272, 196; 1 Swanst., 1; 2 ib., 93.

2. Fees must be secured, if demanded; Castro v. Bennett, 2 J. R., 296.

3. Not bound to proceed, unless fees paid; Gleason v. Clark, 9 Cow., 57; 2 Am. Com. Law, 28.

4. Whether a fixed or liquidated amount is essential to authorize a lien; 14 Abbott's Pr. R., 230; Pugh v. Boyd, 38 Miss., 326, *quere?;* Fox v. Fox, 24 How.; N. Y. Pr. R., 385; Ward v. Wadsworth, 1 E. D. Smith N. Y., 598; Gan v. Marriat, 1 Hilton N. Y., 498; McDonald v. Napier. 14 Ga., 89; *Ex parte* Kyle, 1 Cal., 331; Fowler v. Morrill, 8 Tex., 153.

In the case of Wright v. Ellison, 1 Wallace (U. S.), 16, the court say: " The evidence in the case is wholly silent as to any agreement touching the compensation of the complainant. It is nowhere intimated what he was to receive, or when, or how he was to be paid. No established usage is shown. The matter seems to have been left to rest upon the principle of *quantum meruit,* and to be settled by the agreement of the parties when the business was brought to a close. The doctrine of equitable assignments is a comprehensive one, but it is not broad enough to include this case. It is indispensable to a lien thus created, that there should be a distinct appropriation of the fund by the debtor, and an agreement that the creditor should be paid out of it. This case is wholly wanting in these elements.

In Pugh, admr., v. Boyd, 38 Miss., 326, the court say : " The claim was not for commissions established by professional usage, for money collected by a sheriff on a judgment obtained by the attorney, which are capable of definite ascertainment; nor was it even for a sum due by special contract from the client to the attorney. It was not, therefore, for a fixed and ascertained sum. Without expressing any opinion, whether claims of this sort could be asserted by the attorney as a lien upon money collected by the sheriff under a judgment which the attorney had obtained for the plaintiff, we think it clear that the claim cannot be maintained as it is here proved and in a motion like this."

In some of the states, the amount due the attorney could

be ascertained on such a motion in a summary way by a reference to a commissioner or referee.

In view of the authorities, the application of the doctrine under consideration may be thus succnctly stated : The lien of attorneys and solicitors attaches, 1st. Upon papers and writings including deeds, leases, etc.; 2d. Upon money; 3d. Upon notes deposited for collection ; 4th. Upon a fund or estate; 5th. Upon judgments with their incidents and fruits.

In the almost infinite variety of aspects in which the question may be presented in its operation upon these subjects of its action, the courts, whether of law or of equity, will render such aid and protection as is consistent with their respective powers, and warranted by the circumstances, within the established rules.

In consideration, therefore, of the character of our institutions, and of the somewhat modified relation in this country of attorney and client, we do not think it advisable to extend the doctrine of implied liens, especially, as it is not necessary to the profession, attorneys having it in their power to protect themselves by the exercise of ordinary prudence.

We conclude, therefore : 1st. That the lien sought to be declared in this case, is without precedent; 2d. That it is inexpedient to extend the doctrine of implied liens as applied to the liens of attorneys and solicitors beyond its present limits ; 3d. And, therefore, we approve the action of the court below in sustaining the demurrer, and dismissing the bill.

Leaving the law on this subject, therefore, as we found it, the decree of the court below is affirmed, but without prejudice to any rights the attorney may have within the principles of this opinion.

Simrall, J., having been counsel in this case, took no part in its determination.