KING, Justice,
concurring in part and dissenting in part:
¶ 114. With appropriate respect for the Majority, I concur in part and dissent in part. I join the Majority in holding that all of the funds in question were paid in settlement of MCI’s tax liability to the State of Mississippi, and therefore are indeed public funds. The term “public funds” is defined as “all funds which are received, collected by, or available for the support of or expenditure by any state department, institution or agency, whether such funds be derived from taxes or from fees collected by such state department, institution or agency or from some other source.” Miss.Code Ann. § 7-7-1 (Rev. 2002).
¶ 115. MCI was alleged to have an unpaid tax liability to the State of Mississippi of $lbillion. In an effort to obtain payment of that tax liability, Mississippi Attorney General Jim Hood, under the authority granted to him in Mississippi Code Section 7-5-7 (Rev. 2002), executed a written retention agreement with the Lang-ston Law Firm to recover those unpaid taxes. That retention agreement in all respects met the legal requirements for a valid contract and is, therefore, entitled to be honored.
¶ 116. A valid contract must have: (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with the legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation. Rotenberry v. Hooker, 864 So.2d 266, 270 (Miss.2003). Beyond question, those six requirements were met. The retention agreement clearly indicates that Attorney General Hood and the Lang-ston Law Firm agreed that the Langston Law Firm would represent the State in an effort to recover delinquent taxes from WorldCom in exchange for compensation, specifically outlined in a fee schedule, attached to the agreement. The agreement between Attorney General Hood and the Langston Law Firm was a valid and enforceable contract.
¶ 117. In fulfillment of its obligations under that contract, the Langston Law Firm negotiated a written settlement between MCI (previously WorldCom) and the State of Mississippi, acting through Attorney General Hood. In 2005, the settlement agreement was approved in its entirety and entered as a court judgment by the United States Bankruptcy Court, Southern District of New York.
¶ 118. Under .the terms of that agreement, as reduced to a court judgment, MCI resolved its tax liability by transferring to the State of Mississippi real property, with the estimated value of $7 million, and paying in cash the total sum of $118.2 million, divided as follows: the State received $100 million, the Langston *1292 Law Firm received $14 million and the Children’s Justice Center of Mississippi received $4.2 million. The agreement specified that the amounts were paid “to or on behalf of the State.” Based on the language within the agreement, the total $118.2 was to be paid in settlement of MCI’s tax liability, and as such, was public funds. Having completed its contractual obligation, the Langston Law Firm is entitled to be compensated for professional services rendered under the contract.
¶ 119. The Majority holds that there are only two ways for the Langston Law Firm to receive payment for its professional services. The Majority states that either there must be a specific legislative appropriation for that purpose or the Attorney General must write a check to the Langston Law Firm from his contingency account. The Majority has relied on Section 7-5-7 in reaching this conclusion. I believe that the Majority’s reading of 7-5-7 is overly broad and that it engrafts upon the statute that which is not set forth in it. Absent engrafting upon it, my reading does not lead me to the same conclusion as the Majority in reading Section 7-5-7.[55]
¶ 120. The settlement amount was recovered on behalf on the State of Mississippi as a result of an attorney-client relationship. Therefore, the Langston Law Firm had the right to assert an attorney’s lien and retain, from funds within its possession, an appropriate amount of money as compensation for its professional services. This Court consistently has held that a Mississippi attorney may impose a lien entitling the attorney to recover his fee and expenses from the proceeds of the judgment of a case. Tyson v. Moore, 613 So.2d 817, 827 (Miss.1992). A lien is defined to be “a right by the possessor of property to hold it for the satisfaction of some demand.” Stewart v. Flowers, 44 Miss. 513, 514, 44 Miss. 513 (1870). An attorney’s lien attaches once that fund is created or once the property itself is finally adjudicated as being the property of the client. Id. The lien applies so long as the attorney has the funds in his possession, and is paramount to any other claim. Collins v. Schneider, 187 Miss. 1, 192 So. 20, 22 (1939). Once the money from a judgment has come into the attorney’s posses *1293 sion, the attorney “may retain it to the amount of his bill.” Stewart, 44 Miss. at 514.
¶ 121. The Majority opinion suggests that the common-law concept of attorney’s lien was modified by the Legislature in Mississippi Code Section 7-5-7. There is no language within the statute which alters the right to claim an attorney’s lien or which can be read to suggest that the Langston Law Firm was not entitled to assert an attorney’s lien against the settlement proceeds which it obtained by its professional services. The statute makes absolutely no reference, or modification, to an attorney’s lien, the attorney’s right to be paid for professional services, or its superior priority. Because there was a valid employment contract, the Langston Law Firm was entitled to payment of its contractual fee from the settlement. As soon as the settlement agreement was finalized, and judgment entered by the United States Bankruptcy Court, $14 million was paid by MCI, on behalf of the State, directly to the Langston Law Firm. Once the money was in its possession, the Langston Law Firm was entitled to retain any earned and undisputed fee.
¶ 122. The Majority suggests that the Langston Law Firm could not assert a lien because it did not hold the funds in a separate trust account pursuant to Mississippi Rule of Professional Conduct 1.15(a).[56] The rule also specifically states that a lawyer may disburse any portion of a client’s property that is not in dispute. See M.R.P.C. 1.15(c).[57] When the Lang-ston Law Firm received the $14 million, there was no dispute as to the amount owed to the Langston Law Firm for professional services, and thus, the disbursement was permissible. Therefore, the Langston Law Firm was entitled to retain the money received from MCI as earned and undisputed fees for its professional services.
¶ 123. Because Section 7-5-7 does not alter the law related to an attorney’s fee lien, I disagree with the Majority’s holding that Article Four, Section 100 of the Mississippi Constitution prohibits the payment made directly to the Langston Law Firm. I disagree with the Majority’s interpretation and application. Section 100 states:
No obligation or liability of any person, association, or corporation held or owned by this state, or levee board, or any county, city, or town thereof, shall ever be remitted, released or postponed, or in any way diminished by the legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury; nor shall such liability or obligation be exchanged or transferred except upon pay *1294 ment of its face value; but this shall not be construed to prevent the legislature from providing by general law for the compromise of doubtful claims.
Miss. Const, art. 4, § 100 (1890).
¶ 124. Section 100 specifically prohibits the Legislature from diminishing a tax obligation owed to the State. In the case before us, the action is not a legislative action, but is instead a court judgment. See In re Worldcom, Inc., Case No. 02-13533, 2005 WL 3832063 (Bankr.S.D.N.Y., May 13, 2005). Additionally, the payment by MCI did not serve to reduce the tax liability of MCI. The agreed tax liability was the same, $118.2 million plus the value of the real estate. Rather than diminish its tax liability, the payment transmitted a portion of the settlement proceeds to the State’s attorneys for the benefit of the State.
¶ 125. Beyond question, the better approach would have been to submit all of the settlement proceeds to the Attorney General, have him to deposit those settlement proceeds into his contingency account, and then write a check to Langston Law Firm for the fees earned for professional services. However that did not happen. To now require: (1) the Langston Law Firm to write a check to the Attorney General for $14 million, (2) the Attorney General to deposit that $14 million check into his contingency fund account, and (3) the Attorney General to write a $14 million check to the Langston Law Firm from his contingency account would, at best, be an inefficient and totally symbolic gesture.
¶ 126. While disagreeing with the trial court’s reasoning, I agree with its result and would therefore, affirm its actions. This Court consistently has held that when a trial court reaches the right result, but for the wrong reason, it should be affirmed. See Denham v. Holmes, 60 So.3d 773, 789 (¶ 59) (Miss.2011).
KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.

. Mississippi Code Section 7-5-7 states:
The governor may engage counsel to assist the attorney general in cases to which the state is a party when, in his opinion, the interest of the state requires it, subject to the action of the legislature in providing compensation for such services.
The attorney general is hereby authorized and empowered to appoint and employ special counsel, on a fee or salary basis, to assist the attorney general in the preparation for, prosecution, or defense of any litigation in the state or federal courts or before any federal commission or agency in which the state is a party or has an interest. The attorney general may designate such special counsel as special assistant attorney general, and may pay such special counsel reasonable compensation to be agreed upon by the attorney general and such special counsel, in no event to exceed recognized bar rates for similar services.
The attorney general may also employ special investigators on a per diem or salary basis, to be agreed upon at the time of employment, for the purpose of interviewing witnesses, ascertaining facts, or rendering any other services that may be needed by the attorney general in the preparation for and prosecution of suits by or against the state of Mississippi, or in suits in which the attorney general is participating on account of same being of statewide interest. The attorney general may pay travel and other expenses of employees and appointees made hereunder in the same manner and amount as authorized by law for die payment of travel and expenses of state employees and officials.
The compensation of appointees and employees made hereunder shall be paid out of the attorney general's contingent fund, or out of any other funds appropriated to the attorney general’s office.

. Mississippi Rule of Professional Conduct 1.15(a) states:
A lawyer shall hold clients’ and third persons' property separate from the lawyer’s own property. Funds shall be kept in a separate trust account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such trust account funds and other property shall be kept and preserved by the lawyer for a period of seven years after termination of the representation.

. Mississippi Rule of Professional Conduct 1.15(c) states:
When a lawyer is in possession of property in which both the lawyer and another person claim an interest, the property shall be kept separate by the lawyer until completion of an accounting and severance of their respective interests. If a dispute arises concerning their respective interests, the lawyer shall disburse the portion not in dispute, and keep separate the portion in dispute until the dispute is resolved.