J. E. RIVES ET AL. *v.* ELLA H. PATTY, ADMX., ET AL.

1. ATTORNEY AND CLIENT. *Fees.*

The relation of attorney and client is created by contract, and litigants who have in no way assumed liability for attorney's fees cannot be held therefor, because they derived benefit, directly or incidentally, from the professional services rendered.

2. ATTORNEY'S SERVICES. *Fund realized.*

An attorney employed by some of the creditors of an insolvent estate, who realizes by his services a fund for distribution among all the creditors, cannot have the fund charged with his fees, but must look alone to those who employed him for compensation.

FROM the chancery court of Noxubee county.

HON. T. B. GRAHAM, Chancellor.

The estate of R. C. Patty, deceased, of which appellee, Ella H. Patty, is the administratrix, was declared insolvent, and notice was given to all creditors to present their claims for allowance. Certain of the creditors employed Messrs. Rives & Rives, lawyers, to represent their interest. These lawyers began proceedings to surcharge the administratrix's accounts,

and instituted several suits, the object of all of which was to increase the assets of the estate, and they thereby succeeded in largely augmenting the funds for distribution. The funds being ready for distribution, appellant, J. E. Rives, survivor of the firm of Rives & Rives, and the several creditors by whom they were employed, filed petitions asking the court to charge the funds realized by the services of the attorneys with a reasonable solicitor's fee due Rives & Rives. The court below denied the prayer of the petitions, and the petitioners appealed.

*J. E. Rives, pro se,* and for other appellants.

The administratrix having failed, and continuing to fail, to properly administer the estate, but, instead thereof, having appropriated a large portion of the estate, appellants, W. M. Jones, J. H. Jones, W. S. Ferris, T. S. Murphy and W. I. Barnhill employed the firm of Rives & Rives to force the administratrix to properly manage and account for the assets of the estate, they being deeply interested therein as creditors. If all the funds of the estate realized belonged equally to all the creditors, irrespective of the source from which such funds were obtained, as has been decided by this court, then the services rendered on behalf of any one creditor necessarily inured to the benefit of all. The question presents itself, what was a creditor to do under such circumstances? Seeing that he was about to lose all, he was compelled to give up his whole rights or employ counsel to recover the common fund, while other creditors, who were either too penurious to employ counsel, or being satisfied with the services of the attorney employed, will keep quiet until the common funds are realized, then step up and claim the *pro rata*, at the same time flatly refusing to pay anything for the services rendered, claiming that he had not employed counsel.

It is shown that the firm of Rives & Rives were rightfully employed to protect the funds of the estate; that, in order to recover those funds and protect them, it became necessary for

appellants to take the risks of costs and attorney's fees, and file independent proceedings against the administratrix and her sureties.  It has been held that the amount finally recovered in this independent litigation was assets of the estate.

While W. M. Jones *et al.* had not agreed to pay any stipulated fee for the services rendered by their attorney, their petition shows that they were legally liable for a fee—a reasonable fee—not for their *pro rata* part of the recovery, but for the funds, the whole funds, recovered.

Now, the question presented is, is it just, and is it equitable, that the creditors, other than those who have appealed, shall share in these funds without paying their just proportion of the expenses and labor expended in the procuring of the funds for distribution.  It has been held that they are entitled to share with the others; that distribution shall be made among all creditors "according to their rights."  I do not presume that this court ever intended that a distribution among all creditors "according to their rights," meant that those who had parted with nothing should take their part freed from all expenses and fees, while those at whose instance the recovery was had should, out of their *pro rata*, pay all such fees and expenses.

*C. B. Ames*, for appellees.

It is difficult to discover the legal basis upon which appellants rest their claim.  It cannot be upon the ground of benefit conferred, because a legal right must grow out of a legal relation, and there is no legal relation existing between appellants and the other creditors of the estate of Patty, arising either *ex contractu* or *ex delicto*.  In every litigation there are persons, sometimes parties and sometimes not, who are benefited by the services of attorneys representing other parties to the suit, and yet the attorneys never claim compensation from any but their own clients.  A familiar illustration is afforded by the practical operation of our proceedings in assignment cases.  If any of the creditors employ an attorney to defend

their interest under the assignment, his services inevitably inure to the benefit of creditors claiming under the assignment, but he can only claim compensation from his own clients, because he has no contract with anyone else. The following cases are conclusive against appellants: *Attorney-general* v. *North American Life Ins. Co.*, 91 N. Y., 57 (43 Am. Rep., 648); *Hand* v. *Savannah Railroad Co.*, 21 S. C., 162; *Ex parte Lynch*, 25 S. C., 193; *Hubbard* v. *Camperdown Mills*, 25 S. C., 496; *Roselius* v. *Delachaise*, 5 La. Ann., 481, s. c. 52 Am. Dec., 597.

Argued orally by *C. B. Ames*, for appellees.

WOODS, J., delivered the opinion of the court.

The effort of appellants to charge the fund in the hands of the administratrix with the attorneys' fees of Mr. J. E. Rives, in his own right, and as surviving partner of the firm of Rives & Rives, cannot be successfully maintained. That the services of the attorneys of the appellant creditors were valuable and important is clear, and that a reasonable fee should be paid them is not to be disputed. But shall this fee be paid out of the funds of Patty's estate, now ready for distribution to all the creditors, or shall it be paid by those creditors who employed the Messrs. Rives, and who have been greatly benefited by the services of their attorneys? The supposed right to charge the fund for distribution with the fees of the attorneys of a part of Patty's creditors rests upon the fact that this fund, and all the creditors to whom it is to be distributed, received, directly or incidentally, large benefits from the well-directed efforts of the attorneys employed by the appellant creditors, and that the fund itself should bear the expenses of the successful attorneys' fees, although Messrs. Rives & Rives were confessedly employed by the appellant creditors, and notwithstanding the fact that the effort of their attorneys was, in the main, directed to the securing of all the benefits flowing

from their services to their own clients, and to the exclusion of all other creditors of Patty.

The attorneys, in serving those who employed them, have incidentally served all the other creditors, but those others are not thereby brought under obligation as clients to the Messrs. Rives, nor made liable to compensate those gentlemen for services rendered by virtue of employment by the appellant creditors. The relation of attorney and client is created by contract, and we are not aware of any principle of law or equity which would justify the imposition of attorneys' fees upon litigants who have not assumed liability therefor, either because they have other counsel of their own selection, or because they have elected to employ no counsel, and take the chances of success in the courts without representation of lawyers. It appears to us that it would be a dangerous precedent for litigants, however advantageous to lawyers, if we should hold that counsel may intervene to protect the interests of persons who have not signified any desire for the services of counsel, and, upon success crowning the efforts of such counsel, impose liability upon the unwilling litigants to pay attorneys' fees. It would seem almost as dangerous to compel litigants in a common cause to bear the expenses of counsel fees incurred by their fellow-litigants, though without their procurement or consent, because of incidental benefits resulting from the services of the attorneys of the fighting litigants.

In *Roselius* v. *Delachaise*, 5 La. Ann., 481, a case whose essential facts bring it in the category of the case in hand, this language is employed: " However valuable the services of the plaintiff may have been, which do not appear to be underrated by the defendant herself, yet as she did not employ him, or authorize anyone else to employ him in her suit, the present action cannot be sustained."

The same view, in a similar case, was held in *Chicago, etc., Railroad Co.* v. *Larned*, 26 Ill., 218. To the same effect is *Turner* v. *Myers*, 23 Iowa, 391. See, also, *Attorney-*

*general* v. *N. A. Life Ins. Co.*, 91 N. Y., 57. See, too, *Hand* v. *Savannah, etc., Railroad Co.*, 21 S. C., 162, in which it is held, in this character of case, that "no one can legally claim compensation for voluntary services to another, however beneficial they may be, nor for incidental benefits and advantages to one, flowing to him on account of services rendered to another, by whom he may have been employed."

*Affirmed.*