COLLINS *v.* SCHNEIDER *et al.*

(Division B.   Nov. 13, 1939.)

[192 So. 20.   No. 33849.]

(1)

**Welch & Cooper,** of Laurel, for appellant.

4

**Deavours & Hilbun,** of Laurel, for appellee, Commercial National Bank & Trust Company, of Laurel.

**J. R. Buchanan,** of Laurel, for appellees, B. A. Schneider and Lindsey Waldrup.

Argued orally by **Ellis B. Cooper**, for appellant, and by **J. R. Buchanan** and **Henry Hilbun**, for appellees.

**McGowen, J.**, delivered the opinion of the court.

Jeff Collins, a member of the Bar of this state, filed a bill in equity against Schneider, Waldrup, the Commercial National Bank & Trust Company, Mrs. J. N. Wall, her children and grandchildren as the widow and heirs-at-law of her deceased husband, J. N. Wall, and also the Shell Petroleum Company, in which he sought to enforce a lien on a judgment and the proceeds thereof, then in the hands of the last-named defendant.

The Shell Petroleum Company filed an interpleader, and the proceeds of the judgment were paid to the Clerk of this Court. There were answers, cross-bills and multitudinous pleadings, unnecessary to detail, because the facts as stated will reveal the issue.

On the pleading and proof the court below denied Collins any relief, except as to the Walls, and fixed $600 as a reasonable fee to be paid Collins for his services as an attorney in the litigation which brought about the case here being considered.

Prior to March 3, 1931, Waldrup, one of the appellees, an agent or employe of the Shell Petroleum Company, caused to be erected, at a cost of $2,500, a filling station on the homestead lot of J. N. Wall and his wife. Waldrup was then instrumental in bringing about a lease of this filling station, in writing, to the Shell Petroleum Company by Wall and his wife, for a term of years, the Walls to receive as rental therefor one cent per gallon of gasoline sold from that station.

Waldrup borrowed the $2,500 with which to erect the filling station from the Commercial National Bank & Trust Company, giving his note therefor, said note being endorsed or the payment thereof guaranteed by the appellee Schneider.

On March 16, 1931, the written lease contract was as-

signed in writing, by the Walls, to the bank as collateral security for the payment of the Waldrup note, the rental to be paid to the bank when due by the Petroleum Company. The rentals were paid to the bank, and credited on the Waldrup note for quite a while. Such payments were to be made to the Walls if and when the note and interest were fully paid to the bank.

After some years Mrs. Wall, widow of J. N. Wall, consulted with Jeff Collins in his capacity as an attorney, concerning her rights under her lease contract, being of the opinion that the Petroleum Company was liable for unpaid additional rents, and for damages to the physical property. Upon investigation of the facts, Collins concluded that the Petroleum Company was liable for rental and damages; and also learned of the note held by the bank, which had been executed by Waldrup and Schneider. He thereupon approached an official of the bank, apprised him of the prospective lawsuit, and requested permission of the bank, as assignee of the lease contract, to join it as a party complainant with the Walls. The bank official referred the matter to the attorney for the bank, assuring Collins, however, that the bank would assist him in every way possible. The attorney for the bank advised Collins that it would not consent to join in the suit as a complainant, but would not object to being named as a party defendant therein.

Collins further advised Waldrup and Schneider of the proposed lawsuit; and believed that they had assented to his proposal to join each of them as complainants with the Walls in the proposed litigation.

Collins, as an attorney, brought the suit against the Shell Petroleum Company, also naming the bank as party defendant. In the bill he named the Walls, Waldrup and Schneider as parties complainant, setting up breach of contract, and claim for damages. In its answer the bank admitted the allegations of the bill, which set out the assignments of rents to the bank by the Walls. Collins made a thorough investigation, and trial was had on the

issue made up between the complainants and the Petroleum Company. The case was stubbornly fought, Collins having enlisted the law firm of Welch & Cooper to assist him in the trial, which lasted four or five days.

The court sustained the prayer of the bill, decreeing among other things that, "It is accordingly ordered, adjudged and decreed that the complainants do have and recover from the defendant Shell Petroleum Corporation . . . $1608.00" with six per cent interest from date of judgment. The decree further provided that the $1,608 in rentals should be applied to the payment of the Waldrup-Schneider note and to the bank, the balance, if any, to be paid to the Walls. And it further awarded a judgment in the amount of $161 in favor of the Walls, for damages to property.

Waldrup denied that he assented to Collins' request that he become a party to the bill, but admitted learning that he was a party to the suit during the trial thereof, but had made no complaint in regard to the matter either to Collins or to the court. Schneider denied that he had consented to become a party to the bill, contrary to the belief of Collins.

The court found that the appellees urged Collins on in the prosecution of the suit for rent and damages; and found, further, that it was without power to change the decree directing that the amount thereof be paid to the bank, or possibly, that the first decree was res adjudicata as to the claim of Collins for a lien thereon.

The Walls were insolent. The evidence conclusively shows that nothing would have been recovered on the original cause of action from the Shell Petroleum Company, had it not been for Collins' labor, zeal and skill in the investigation and vigorous prosecution of that suit to a successful conclusion. In that suit Collins had contended for a decree for $3,000, but only recovered a decree for $1,608. Waldrup and Schneider were present in court as witnesses they say at the time of the first suit. The bank was in court by pleading and by attorney

present in court during the trial of the original case, its pleading in effect assenting to a recovery of rents and damages. Collins had no contract for any specific sum to be paid for his services as an attorney in the case.

As to Waldrup, the maker of the note to the bank, and the one primarily liable thereon to the bank, we are of opinion that by his action, after learning that he was named party complainant, in taking no steps during the trial to correct the error, if error there were, assented thereto in effect, and cannot, after decree rendered in his favor, repudiate it in order to avoid a lien on the money decree, and the proceeds of such decree. He had as much interest in the result as did the Walls. He is liable for the certified fee on implied contract.

In this state there is no statute fixing or regulating the lien of an attorney, or the enforcement thereof. In the case of Stewart v. Flowers, 44 Miss. 513, 7 Am. Rep. 707, it was held by this Court that an attorney's lien on judgments and decrees obtained by them for fees on account of services rendered, belongs to the family of implied common law liens, and is firmly engrafted on the common law. The lien of attorneys on judgments and decrees obtained by them for fees, is based mainly on possession of such judgments or decrees, but partially also on the merit and value of their services. It exists upon the money, papers and writings of the client in the attorney's hands, which is denominated a retaining lien. Such lien exists upon judgments and decrees, and the proceeds thereof, and is called a charging lien.

In the case of Halsell v. Turner, 84 Miss. 432, 36 So. 531, this Court said: ''The rule in this state has always been that an attorney has a lien on the funds of his client for the services rendered in the proceeding by which the money was collected. Dunn v. Vannerson, 7 How. 579; Pope v. Armstrong, 3 Smedes & M. [214], 221; Cage v. Wilkinson, Id. 223; Stewart v. Flowers, 44 Miss. [513], 518, 7 Am. Rep. 707. This lien applies so long as the attorney has the funds in his possession,

and is paramount to any other claim.'' The Court held the above rule just as applicable to implied contracts for the reasonable value of the services of the attorneys as to express contracts therefor. It concluded the opinion in these words: ''The attorney has a prime lien granted by law and growing out of the relation of the parties.''

In the case at bar the court below held that there was an implied contract between the Walls and Collins only that the latter should be paid the reasonable fair value of his services, which he adjudged to be $600. The value of the services as fixed by the lower court is approved by us.

We think, however, that Collins had a paramount lien on the money decree which he had obtained, and on the proceeds thereof in the hands of the judgment debtor when the bill herein was filed, ready to be paid over by it, but which was not paid to Collins because the bank, Waldrup and Schneider refused to execute a release to the debtor, so that Collins could collect his fees for the collection, and the proceeds of that judgment are now under the control of the Court. The money decree had not passed from the possession of the attorney who procured it in the sense that the judgment, still in force and unsatisfied, is in the possession of the attorney whose services procured it to be rendered.

The cause of action here was the question of the rentals due the Walls. These rentals had been assigned by the Walls to the bank as collateral security for the Waldrup note, although the bank considered the note amply secured without such assignment. Waldrup was protected by this collateral, and likewise Schneider (Waldrup's guarantor). Between the bank and the Walls there existed the relation of assignee and assignor. Collins, as attorney for the assignors, called on the assignee to sue the Petroleum Company, the assignee being interested, pro tanto, to the amount of its note and interest. It declined to assume the costs and hazards of the lawsuit, but gave its permission to the assignee's attorney to

bring the suit. Collins, as attorney, proceeded with the affirmative assent of the assignee bank, to ultimate success. The decree of the court was in favor of the complainants, and against the Shell Petroleum Company; but adjudged that the proceeds be paid to the bank as assignee, in accordance with the prayer of the bill.

Did the fact that the court decreed that the proceeds of the judgment be paid to the assignee destroy the paramount lien? We unhesitatingly reply in the negative. Suppose the bank itself had brought this suit, could the assignors have required the bank to credit them with the full amount of the decree without deducting therefrom the reasonable value of the attorney's services, who procured the decree freed from his lien? Certainly not.

The effort here is to enforce the attorney's lien on the judgment and its proceeds, and does not alter or change that decree in the slightest. It is not required that an attorney shall insist upon the enforcement of the lien before the rendition of the judgment procured by his services, but afterwards. The effort to enforce a lien on the judgment and its proceeds is not to alter or change it. To enforce a lien on a judgment is not to change it in a legal sense. Collins has pursued the usual method of enforcing his.

There is no merit in the contention that the recitals in the decree are res adjudicata of Collins' lien for his fee for services as attorney. If that view were entertained for a moment, then every such final judgment would preclude an attorney from enforcing his lien. Collins was in no sense a litigant at the time the decree was entered upon which he now seeks to impose his lien. It may be that Collins could not hold the bank liable for a fee in this case upon an implied contract, but that is not the test or the issue here.

The assignee, by its refusal to sue, and its agreement for the assignors to sue, thereby bound itself, so that it cannot have the full proceeds of the judgment freed from the lien of the attorney. The holder of collateral is some-

times held liable to the assignor thereof for his negligence in causing loss of, or damage to, the collateral; and at all events, in this case the bank and Schneider are not in a position to oppose the enforcement of the lien here, and it would be most inequitable and unjust for them to be allowed to "ride free" on the facts of this case. They are estopped.

The case of Rives v. Patty, 74 Miss. 381, 20 So. 862, 60 Am. St. Rep. 510, and other like cases, have no bearing upon the facts of this case. The parties here not only had a benefit, but were directly parties in interest, actually in court, with full knowledge of, and acquiescence in, the situation.

It is the decree of this Court that Collins shall have a lien on the funds in the hands of the Chancery Clerk, for the amount of $600 less $161, ordered by the lower court's decree to be paid by said clerk, or $439, with six per cent. interest thereon from date of decree in the court below.

Reversed and decree here for appellant.