In re Wendell Glenn BLOUNT.

FREELAND & FREELAND, Plaintiffs,

v.

Wendell BLOUNT, Saul Fesman, Paul Bousquet, Queen City Home Health Care Company, American Mobility Inc., and Mississippi Durable Medical Equipment, Inc., Defendants.

and

QUEEN CITY HOME HEALTH CARE COMPANY, American Mobility, Inc., Saul Fesman and Paul Bousquet, Cross–Claimants,

v.

Wendell BLOUNT and Mississippi Durable Medical Equipment, Inc., Cross Defendants.

Bankruptcy No. 91–21761.
Adv. Nos. 92–1025, 92–1172 and 92–1173.

United States Bankruptcy Court,
N.D. Mississippi.

Jan. 7, 1994.

Jeffery M. Navarro, Aberdeen, MS, for Wendell Glenn Blount.

T.H. Freeland, III, and Hale Freeland, Freeland & Freeland, Oxford, MS, for Freeland and Freeland.

Kenneth A. Rutherford and Terry S. Williamson, Alston, Rutherford, Tardy & Van Slyke, Jackson, MS, Paul Bousquet, Winthrop, Stimson, Putnam & Roberts, Washington, DC, and Mary C. Henkel, Cincinnati, OH, for Queen City Home Health Care Co., American Mobility, Inc., Saul Fesman and Paul Bousquet.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is the complaint filed by the plaintiffs, Freeland & Freeland, attorneys at law, against the defendants, Wendell Blount, Saul Fesman, Paul Bousquet, Queen City Home Health Care Company, American Mobility, Inc., and Mississippi Durable Medical Equipment, Inc.; answers and affirmative defenses having been filed on behalf of said defendants; a cross-claim having been filed by Queen City Home Health Care Company, American Mobility Inc., Saul Fesman, and Paul Bousquet against the cross-defendants, Wendell Blount and Mississippi Durable Medical Equipment, Inc.; answer having been filed by the said cross-defendants; all issues having been joined; and the court having heard and considered same hereby finds as follows, to-wit:

## I.

### JURISDICTION

The court has jurisdiction of the parties to and the subject matter of these consolidated adversary proceedings pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. Although, for the most part, these adversary proceedings are non-core proceedings, all parties to the proceedings, pursuant to 28 U.S.C. § 157(c)(2), have consented to this court's hearing and determining all of the issues, as well as, entering appropriate final orders and judgments, subject to appellate review pursuant to 28 U.S.C. § 158.

## II.

### DISCLAIMER

This court previously heard and decided in this bankruptcy case a non-dischargeability adversary proceeding, no. 91–2241, filed by the plaintiffs herein, Freeland & Freeland, against the debtor, Wendell Glenn Blount. Although the factual circumstances of that proceeding and the instant proceedings are similar, Blount elected not to appear and defend the plaintiffs' complaint. None of the other defendants herein were parties to the proceeding. None of the other defendants herein were parties to the proceeding. Not surprisingly, the proof received and considered by the court in the previous proceeding was dramatically different from that received

and considered in the instant proceedings. Therefore, the court does not consider itself bound by any of the findings or determinations of the previous proceeding insofar as they might affect the relative legal positions of the parties hereto.

## III.

### IDENTITY OF THE PARTIES

The plaintiffs, Freeland & Freeland, are members of a law firm formerly known as Freeland, Freeland, & Wilson. For purposes of this opinion, the plaintiffs will be referred to simply as Freeland & Freeland.

The defendants Saul Fesman, Paul Bousquet, Queen City Home Health Care Company, and American Mobility, Inc., will be referred to respectively as Fesman, Bousquet, Queen City, and American Mobility, or sometimes collectively as the Queen City group.

The defendants Wendell Blount and Mississippi Durable Medical Equipment, Inc., will be referred to respectively as Blount and Mississippi Durable.

## IV.

### BASIS OF THE COMPLAINT AND CROSS-COMPLAINT

The plaintiffs have filed their complaint alleging that settlement proceeds generated from several lawsuits were wrongfully paid by the defendants, Queen City, American Mobility, Fesman, and Bousquet, to the defendants, Blount and Mississippi Durable, in disregard of an alleged charging lien existing in favor of the plaintiffs, as well as, an assignment of said proceeds from Blount to the plaintiffs. The complaint alleges fraud, fraudulent concealment, and tortious interference with the plaintiffs' contract rights.

The cross-complaint filed by the defendants, Queen City, American Mobility, Fesman, and Bousquet, seeks recovery and/or indemnity from Blount and Mississippi Durable for any amounts which they, the cross-claimants, may be held liable as a result of the plaintiffs' complaint. In addition, they ask that said amounts be determined to be nondischargeable debts in Blount's bankruptcy case, based on allegations of fraud and conversion.

## V.

### FACTUAL DISCUSSION

On August 23, 1989, Blount employed the plaintiffs to file suit against Industrial Design Associates in the Circuit Court of Calhoun County, Mississippi. The case, which was styled *Mississippi Durable v. Industrial Design Associates,* was removed to the United States District Court for the Northern District of Mississippi, referred to hereinafter as the District Court, and assigned case no. 89–130–D–D. The case was subsequently referred to this court and assigned adversary proceeding no. 92–1148. It was consolidated for trial and heard with adversary proceeding no. 91–2239, a non-dischargeability cause of action filed by Industrial Design Associates against Blount.

On January 15, 1990, Blount employed the plaintiffs to file three additional lawsuits in the District Court which were styled as follows: *Mississippi Durable v. Queen City,* No. WC90–4–BD; *Mississippi Durable v. American Mobility,* No. WC90–5–BD; and *Medical Concepts, Inc. v. American Mobility,* No. WC90–3–BD.

Blount also employed the plaintiffs for representation in a lawsuit filed by Queen City against Blount and Mississippi Durable in the United States District Court for the Southern District of Ohio. This suit was based on the same set of facts as the Queen City/American Mobility causes of action filed in the Northern District of Mississippi, so it was transferred to the Northern District and consolidated with the other pending proceedings. Three of the four cases were referred to this court and assigned adversary proceeding nos. 92–1025, 92–1172, and 92–1173, as set out in the above caption.

At one point in time, Medical Concepts, Inc., referred to hereinafter as Medical Concepts, was owned and/or controlled by Blount. In December, 1989, Blount entered into a transaction to convey his ownership in Medical Concepts, as well as, Mississippi Durable to a Texas corporation known as Wespac Medical Products, Inc., hereinafter re-

ferred to as Wespac. For reasons unknown to the court, this transaction unraveled to the extent that Mississippi Durable was reconveyed to Blount while Medical Concepts was retained by Wespac. Mississippi Durable manufactured lift chairs, a health related product, and Medical Concepts manufactured scooters, utilized primarily by persons with ambulatory difficulties. Although Blount did not control Medical Concepts throughout the District Court litigation, the plaintiffs continued to represent Medical Concepts, which was then owned by Wespac, as well as, Blount and Mississippi Durable.

Because payment arrangements apparently became unsatisfactory, the plaintiffs informed Blount that they could no longer represent him or his companies unless the fees and expenses then owing were paid. As a result, in October, 1990, Blount *orally* assigned the plaintiffs an undetermined amount of the proceeds that he anticipated receiving from the settlement of the lawsuits against Queen City and American Mobility. As a condition of this assignment, the plaintiffs agreed to continue representing Blount and his companies in the lawsuits against Queen City and American Mobility, as well as, in several other on-going matters, such as the Henderson/Autocomp matter, the Alkanox/Comquest matter, and significantly the lawsuit filed by Mississippi Durable against Industrial Design Associates.

The existence of the verbal assignment was verified by Dennis Goldman, Jr., general manager of Med–Products, U.S.A., Inc., who testified that he had heard Blount discuss the assignment of the settlement proceeds to the plaintiffs. The precise terms of the assignment, however, were unknown. Blount could have said that the plaintiffs would be paid for their legal services from the settlement proceeds, or he could have said that he specifically assigned all of the proceeds of the settlement to the plaintiffs. Goldman testified that, regardless of the assignment, he understood that Blount controlled the settlement negotiations since he had the ultimate authority to approve the settlement terms.

Following the assignment, the plaintiffs initiated settlement negotiations with Bousquet, the attorney representing Queen City and American Mobility. As a part of these negotiations, on November 12, 1990, Bousquet faxed a letter to the plaintiffs which stated the following:

> For purposes of settlement negotiation only.

1. Queen City/AMI to pay MDME/MC $120,000

2. MDME/MC to receive approximately 77 scooters. MDME to assume all responsibilities of AMI for any of MC's Eagle scooters which AMI sold to third parties ...

3. Blount and MDME to indemnify Queen City for any liabilities it incurs to Gaffney (Ortho–Kinetics) in the pending litigations involving patents on the seat lift chairs.

.  .  .  .  .

(See plaintiffs' exhibit 6.)

On November 14, 1990, the plaintiffs responded, presumptuously without the consent of their clients, in a faxed letter to Bousquet which stated that, "I have been authorized to accept the offer of settlement which you sent me via facsimile on November 12 on behalf of Mississippi Durable Medical Equipment (MDME), Medical Concepts (MC) and Wendell Blount." ... (See plaintiffs' exhibit 7.) This letter essentially restated the provisions set forth in Bousquet's earlier letter; it was faxed to Blount and to Ronald Brown, an attorney in Texas who represented Wespac.

The plaintiffs adamantly contend that the combined effect of these two letters amounted to a binding settlement of the lawsuits. The plaintiffs assert that their position is further substantiated by the fact that the settlement terms expressed in these two letters were practically identical to the settlement terms that were incorporated in the final settlement documents which were filed in the District Court. The plaintiff's argument, however, is seriously flawed for two reasons:

1. There was an obvious dispute between Blount and Mississippi Durable, on one side, and Medical Concepts, on the other side, as to who would receive the 77 scooters. (Al-

though the parties have not commented on this point, Bosquet's fax does not distinguish as to who is to receive the $120,000, Mississippi Durable or Medical Concepts.)

2. If Medical Concepts, which Blount no longer owned, were to receive the 77 scooters, and if the plaintiffs were to receive the $120,000 cash proceeds, Blount and/or Mississippi Durable would receive nothing. As such, Blount, the client, was unalterably opposed to the manner in which the consummation of this settlement would affect him and Mississippi Durable.

For these reasons, this court cannot conclude that a settlement had been reached.

The plaintiffs strenuously urged Blount to accept the settlement, but he was unwilling to do so. As an attempted inducement, the plaintiffs, who continued to represent Medical Concepts, proposed that the settlement be consummated with Queen City and American Mobility, but that the issue concerning the 77 scooters be reserved for a later resolution between Blount and Medical Concepts.

When the negotiations between the plaintiffs and Blount appeared to be reaching an impasse, T.H. Freeland, III, one of the plaintiffs' partners, wrote the following letter to Blount discussing the possibility of accepting only $60,000 from the settlement proceeds, having his firm discontinue representation in the unrelated matters, but completing the settlement with Queen City and American Mobility:

December 18, 1990

Mr. Wendell Blount
Mississippi Durable Medical Equipment
P.O. Box 1118
Calhoun City, Mississippi 38916
Dear Wendell:

I have your FAX and understand that you wish to terminate our employment as your attorneys in all cases in which we now represent you. I have advised Ron Brown, counsel for Medical Concepts of your action. Since Medical Concepts wishes to go forward with the settlement of its claim I intend to advise counsel for Queen City of that fact. *In view of our discharge I must also advise Queen City's counsel of that fact and that we no longer represent you and that the settlement is off.* I have not yet done this because of a call from Dennis Goldman, who has just informed me that you are willing to "settle" these various cases provided you get $60,000.00 and one half the scooters. Since I am no longer representing you I cannot and will not negotiate with Wespac/Medical Concepts regarding the scooters, nor can I proceed with settlement of the Queen City cases without specific authorization from you. Since you have reneged on your agreement to pay us $120,000.00 settlement on the fees we are owed by your corporation and you personally and are offering us only $60,000.00, I am no longer willing to represent you in the IDA or the Pride cases. *If you wish to go forward with the settlement of the Queen City cases, deal with Wespac yourself, and have MDME pay us $60,000.00 on what we are owed (we are now owed approximately $130,000.00), please advise me of that fact immediately and authorize me to complete the settlement of the Queen City cases.* (emphasis supplied)

If I do not hear from you by noon tomorrow, I will assume you are not interested in the proposition set forth above and will advise Queen City's counsel the settlement is off.

Very truly yours,
T.H. Freeland, III

(See defendants' exhibit 32.)

Blount, however, discharged the plaintiffs from representation on December 18, 1990, and advised that he did not accept the terms of the settlement and that as far as he was concerned the settlement was off. (See defendants' exhibit 31.) Blount then commenced settlement negotiations with Bousquet on his own behalf.

Shortly thereafter, the plaintiffs filed a motion to withdraw as counsel for Blount and Mississippi Durable in the lawsuits against Queen City and American Mobility. However, on January 8, 1991, the plaintiffs, again concerned about their fees and expenses, filed a motion to intervene in the District Court lawsuits and attached to the motion a proposed intervenor's complaint.

In the interim, Blount on behalf of Mississippi Durable reached a settlement with Queen City and American Mobility. Although the terms of the agreement were distinctly similar to the terms of the settlement agreement that had been negotiated by the plaintiffs, Blount and/or Mississippi Durable was to receive the $120,000 cash proceeds. On January 18, 1991, Blount, Mississippi Durable, American Mobility, and Queen City filed a stipulation of dismissal of claims and counterclaims with prejudice and an agreement of settlement in the District Court. Blount testified unequivocally that he would not have settled the lawsuits against Queen City and American Mobility had he not received the $120,000 cash proceeds. The stipulation of dismissal stated that it was without prejudice to the plaintiffs' motion to intervene and it was subject to the plaintiffs' rights in the lawsuit.

On January 17, 1991, the date that Blount executed the stipulation of dismissal, he was given a check by Bousquet, dated January 16, 1991, in the sum of $120,000, payable to Mississippi Durable, and drawn on the account of Queen City. Blount testified that after the stipulation was filed with the District Court, he utilized the proceeds from the check to pay other bills that he owed and did not pay the plaintiffs anything.

Bousquet candidly testified that he was aware of the plaintiffs' claims for attorneys fees and expenses as a result of the motion to intervene and the proposed intervenor's complaint prior to releasing the $120,000 check payable to Mississippi Durable. As such, whether there was an earlier verbal notice from the plaintiffs to Bousquet is of no consequence. Notice was given to Bousquet before the disbursement, and, therefore, is imputed to Queen City and American Mobility. Queen City and American Mobility decided to finalize the settlement with Blount and Mississippi Durable despite the asserted claims of the plaintiffs. Their decision, as will be discussed hereinbelow, was not well reasoned.

The Medical Concepts lawsuit against American Mobility was settled by the plaintiffs in May, 1991.

The court would observe that the verbal assignment occurred between Blount and the plaintiffs while the settlement check was paid by Queen City to Mississippi Durable. Because of Blount's ownership and control of Mississippi Durable, the court places little significance on the identity of these entities.

At the trial, Blount's testimony appeared to be extremely "friendly" to the plaintiffs, who earlier received a nondischargeable judgment against Blount, as noted hereinabove, in the sum of $120,000. This attitude can be easily explained because if the plaintiffs are successful in recovering anything from the Queen City group, Blount's liability to the plaintiffs will be reduced commensurately.

## VI.

### CONCLUSIONS OF LAW REGARDING EFFECTIVENESS OF ASSIGNMENT AND SETTLEMENT

From the above recitation of facts, the court makes the following conclusions, to-wit:

█ A. The purported assignment of the settlement proceeds of the lawsuits against Queen City and American Mobility from Blount and/or Mississippi Durable to the plaintiffs is not effective as a matter of law for the following reasons:

1. There was no testimony that the oral assignment was irrevocable. It appears that even the plaintiffs realized that the assignment could be revoked inasmuch as T.H. Freeland, III, indicated that he was willing to negotiate the terms of the law firm's claims for fees and expenses, at a time when the relationship between the plaintiffs' and Blount was beginning to deteriorate.

2. The testimony was unequivocal that the assignment was conditioned on the plaintiffs' continuing to represent Blount, Mississippi Durable, and Blount's other companies, in a series of on-going legal matters. The plaintiffs did not continue to perform these services. The court judicially notices, as a result of adversary no. 91–2239 and adversary no 92–1148, which were litigated in this court, that the plaintiffs withdrew from the lawsuit filed by Mississippi Durable against

Industrial Design Associates. Soon thereafter, a judgment was rendered against Blount in the District Court in favor of Industrial Design Associates on its counterclaim. Because the plaintiffs did not fully perform, the assignment fails for a lack of consideration. (Parenthetically, the court notes that there was no proof developed concerning this particular issue during the trial of the nondischargeability adversary proceeding initiated by the plaintiffs against Blount, no. 91–2241.)

■ The plaintiffs cannot avail themselves of the defense that they were prevented from performing by Blount. Their actions, in attempting to force the settlement on Blount and Mississippi Durable for their own benefit, justified their termination.

■ B. The court is of the opinion that no binding settlement agreement had been reached before the plaintiffs were terminated on December 18, 1990. The correspondence between the plaintiffs and Bousquet did not constitute a final settlement. The details had to be resolved. The correspondence was only a settlement outline, and could not have been finalized because of the disputed issue concerning the scooters. Clearly, Blount had the right on behalf of himself and Mississippi Durable to approve the terms of any settlement. When he realized that he was likely to receive nothing, he repudiated the proposal negotiated by the plaintiffs.

The settlement agreement subsequently negotiated by Blount was materially different from that negotiated by the plaintiffs because the recipient of the proceeds became Mississippi Durable, not the plaintiffs. This was a totally different agreement even though the cash consideration paid by Queen City and American Mobility was the same.

Therefore, the court must conclude that there was no enforceable assignment of the settlement proceeds to the plaintiffs, nor was there an enforceable settlement agreement negotiated by the plaintiffs.

## VII.

*CONCLUSION OF LAW REGARDING ATTORNEYS' CHARGING LIEN*

■ The most difficult issue to resolve in this proceeding is whether the plaintiffs had a lien, of some description, against the settlement proceeds, securing their charges for legal services performed relative to the settlement. In this context, the court observes the existence of the following factors:

A. The plaintiffs had obviously been discharged by Blount prior to the finalization of the settlement agreement. Blount was simply not going to approve a settlement which provided him nothing. As such, the court finds that the settlement agreement negotiated by the plaintiffs was not capable of being consummated when Blount discharged the plaintiffs.

B. The plaintiffs did perform valuable legal services for Blount and Mississippi Durable in prosecuting their claims against Queen City and American Mobility. However, any interest in the settlement proceeds, ultimately realized because of these lawsuits, would be limited to the amount of work actually performed on these lawsuits, not to other unrelated matters. As such, the plaintiffs' claims would not encompass legal services provided in the representation of Blount in such matters as the Industrial Design Associates lawsuit, the Henderson/Autocomp matter, the Alkanox/Comquest matter, etc.

C. Although the check had been tendered to Mississippi Durable by Queen City prior to the settlement documents being filed with the District Court, there was an agreed judgment subsequently filed and entered of record.

D. Since the plaintiffs were paid approximately $10,000 by Medical Concepts for its representation in the consolidated lawsuits, this sum perhaps should be offset against the amount of the plaintiffs' claims to the settlement proceeds. This issue, however, will be addressed more fully hereinbelow.

E. Clearly, Queen City and American Mobility knew of the plaintiffs' motion to intervene and the proposed intervenor's complaint before tendering the $120,000 check to Mississippi Durable. They simply took the risk of ignoring the plaintiffs' claims to settle the litigation with Blount and Mississippi Durable. The court recognizes that there was no order allowing the plaintiffs' intervention

in the District Court causes of action until after the payment was made. However, insofar as the issue of notice is concerned to Queen City and American Mobility, this factor has little significance.

F. The court is aware that the plaintiffs' agreement to provide legal services for Blount and Mississippi Durable was not a contingent fee contract, and additionally, is aware that the plaintiffs never had actual possession of the settlement proceeds.

The court has found several cases which are instructive in resolving this extremely close question. See *Stewart v. Flowers*, 44 Miss. 513 (Miss.1871); *Mosely v. Jamison*, 71 Miss. 456, 14 So. 529 (Miss.1894); *Halsell v. Turner*, 84 Miss. 432, 36 So. 531 (Miss.1904); *Chattanooga Sewer Pipe Works v. Dumler*, 153 Miss. 276, 120 So. 450 (Miss.1929); *Abernethy v. Savage*, 163 Miss. 789, 141 So. 329 (Miss.1932); *Webster v. Sweat*, 65 F.2d 109 (5th Cir.1933); *Collins v. Schneider*, 187 Miss. 1, 192 So. 20 (Miss.1939); *Pollard v. Joseph*, 210 Miss. 828, 50 So.2d 546 (Miss. 1951); *Indianola Tractor Co., Inc. v. Tankesly*, 337 So.2d 705 (Miss.1976); and *Brothers in Christ, Inc. v. American Fidelity Fire Insurance*, 680 F.Supp. 815 (S.D.Miss.1987).

*Collins v. Schneider*, supra, which cites several earlier decisions, provides the following insight:

> In this state there is no statute fixing or regulating the lien of an attorney, or the enforcement thereof. In the case of *Stewart v. Flowers*, 44 Miss. 513, 7 Am.Rep. 707, it was held by this Court that an attorney's lien on judgments and decrees obtained by them for fees on account of services rendered, belongs to the family of implied common law liens, and is firmly engrafted on the common law. The lien of attorneys on judgments and decrees obtained by them for fees, is based mainly on possession of such judgments or decrees, *but partially also on the merit and value of their services.* It exists upon the money, papers and writings of the client in the attorney's hands, which is denominated a retaining lien. *Such lien exists upon judgments and decrees, and the proceeds thereof, and is called a charging lien.* (Emphasis supplied)

In the case of *Halsell v. Turner*, 84 Miss. 432, 36 So. 531 this Court said: "The rule in this state has always been that an attorney has a lien on the funds of his client for the services rendered in the proceeding by which the money was collected. *Dunn v. Vannerson*, 7 How. 579; *Pope v. Armstrong*, 3 Smedes & M. [214], 221; *Cage v. Wilkinson*, Id. [3 Smedes & M.] 223; *Stewart v. Flowers*, 44 Miss. [513], 518, 7 Am.Rep. 707. This lien applies so long as the attorney has the funds in his possession, and is paramount to any other claim." The Court held the above rule just as applicable to implied contracts for the reasonable value of the services of the attorney as to express contracts therefor. It concluded the opinion in these words; "The attorney has a prime lien granted by law and growing out of the relation of the parties."

In the case at bar the court below held that there was an implied contract between the Walls and Collins only that the latter should be paid the reasonable fair value of his services, which he adjudged to be $600. The value of the services as fixed by the lower court is approved by us.

We think, however, that Collins had a paramount lien on the money decree which he had obtained, *and on the proceeds thereof in the hands of the judgment debtor when the bill herein was filed,* ready to be paid over by it, but which was not paid to Collins because the bank, Waldrup and Schneider refused to execute a release to the debtor, so that Collins could collect his fees for the collection, and the proceeds of that judgment are now under the control of the Court. The money decree had not passed from the possession of the attorney who procured it in the sense that the judgment, still in force and unsatisfied, is in the possession of the attorney whose services procured it to be rendered. (Emphasis supplied)

192 So. at 22–23.

The decision noted the distinction between a retaining lien and a charging lien, the latter of which is asserted herein. Notably, the court concluded that the lien of attorneys on

judgments and decrees obtained by them was based on the value of the attorneys' services.

Most significantly, however, was the language that the charging lien attached to the proceeds in the hands of the judgment debtor. To the court this is a sensible result. It prevents a client from taking unfair advantage of his attorneys by discharging them after the lion's share of the work has been performed, settling the case pro se, and then taking the proceeds with no regard for the attorneys' efforts.

The foregoing factual scenario occurred in the case of *United States v. Transocean Air Lines, Inc.,* 356 F.2d 702 (5th Cir.1966). Transocean hired counsel to represent it in certain litigation on a contingency fee basis. The court applying Florida law held that "a contract for the payment of attorneys' fees out of the judgment recovered operates as an equitable assignment of the fund pro tanto and creates a lien." *Id.* at p. 705. "Any settlement without the knowledge or notice to counsel and the payment of their fees is a fraud on them, whether so intended or not." *Id.* Transocean had employed its first attorney to represent it and had agreed to compensate him from any judgment collected in the proceeding. A second attorney hired by Transocean negotiated the final settlement and the parties entered into a stipulation which recited that Transocean would be paid $75,000, and the case would be dismissed with prejudice. Transocean and its second attorney failed to acknowledge the first attorney's contingency fee agreement. The court did not permit the first attorney's fee contract to be ignored when his efforts contributed appreciably to the ultimate settlement.

This court does not draw any distinction between the contingency fee contract in *Transocean,* and the obligation to pay the plaintiffs herein for the fees and expenses that they earned or incurred while representing Blount and Mississippi Durable in the lawsuits against Queen City and American Mobility. Of particular importance is the fact that Queen City and American Mobility were placed on notice in a timely fashion by the plaintiffs that their fees were unpaid.

Another decision, which did not allow the attorney's charging lien to be impressed, is *Brothers in Christ v. American Fidelity Fire Insurance,* 680 F.Supp. 815 (S.D.Miss.1987). There the court recognized that actual possession of the settlement proceeds was not necessary, but that possession could be constructive. *Id.* at p. 818. The court denied the charging lien principally because no judgment or decree in favor of the client of any description had ever been rendered.

Finally, a case which also did not require the attorneys, seeking to impose a charging lien, to have actual possession of the settlement proceeds is *Indianola Tractor Co., Inc. v. Tankesly,* 337 So.2d 705 (Miss.1976). The court directed the payment of attorney's fees to the law firm whose efforts had enabled the settlement to be realized, the proceeds of which were still in the possession of the judgment debtors. Like the plaintiffs herein, the attorneys had filed a motion to intervene, asserting their competing claim to the settlement proceeds.

Because of the foregoing authorities, this court is of the opinion that the plaintiffs had legitimate claims in the settlement proceeds to the extent of the services that they rendered in generating said proceeds. The claims cannot extend to legal services rendered by the plaintiffs for Blount and/or Mississippi Durable in any of the other proceedings. The plaintiffs properly notified the defendants through the motion to intervene and the proposed intervenor's complaint of their interest. The defendants ignored this notice, paid the settlement proceeds entirely to Blount and/or Mississippi Durable, and now must face the consequences of Blount's failure to pay an appropriate amount which was due the plaintiffs. The payment by Queen City *before* the settlement and stipulation of dismissal were finalized in the District Court is no "escape hatch" or defense to the plaintiffs' cause of action.

### VIII.

### *CONCLUSION REGARDING INDIVIDUAL LIABILITY*

■ The plaintiffs have sought the imposition of individual liability and damages

against both Fesman and Bousquet. Other than the fact that Fesman owned the controlling interests in Queen City and American Mobility, there was absolutely no evidence introduced at the trial that revealed any wrong doing on Fesman's part in any way whatsoever.

Bousquet, as the attorney representing Queen City and American Mobility, appeared to be only carrying out the directives of his clients. As to Bousquet, there also was no evidence of any fraud, conspiracy, or dishonesty. He did, however, act under a misapprehension of the law. Queen City and American Mobility may well have a cause of action against Bousquet if his legal advice to them was in error; however, this matter is not before this court. Although the court would not have ignored the plaintiffs' notice, to extend individual liability against Bousquet under the quantum of proof presented would be inequitable and contrary to law. As noted earlier, the court perceives that the clients, Queen City and American Mobility, made the decision to ignore the plaintiffs' claims in an effort to resolve the matters with Blount and Mississippi Durable. They are the parties that must remain liable for the plaintiffs' claims.

## IX.

### PUNITIVE DAMAGES

 The court is of the opinion that the conduct of the defendants, Queen City and American Mobility, is not so egregious or wanton as to warrant an award of punitive damages or additional attorneys' fees. Therefore, the plaintiffs' claims for punitive damages and additional attorneys' fees are not well taken and will be disallowed.

## X.

### ASSESSMENT OF DAMAGES

The precise amount of attorneys' fees and expenses incurred by the plaintiffs in representing Blount and Mississippi Durable in the lawsuits against Queen City and American Mobility have not been presented to the court with a reasonable degree of certainty. From all indications, it appears that the fees

also include services rendered in connection with the lawsuit filed by Medical Concepts against American Mobility. If this is the case, as mentioned earlier, the payment by Medical Concepts must be deducted from the total amount alleged to be due. The court will require the plaintiffs to reconstruct their fees so that an appropriate judgment can be rendered. The defendants will be afforded an opportunity to comment on the reasonableness of the fees before this matter is finalized. The court will thereafter award a judgment against Queen City and American Mobility for the amount that remains to be paid in connection with the legal services rendered by the plaintiffs that contributed to the settlement of the causes of action against Queen City and American Mobility.

As noted earlier, the plaintiffs obtained a nondischargeable judgment against Blount in the sum of $120,000 in adversary proceeding no. 91–2241. Should the plaintiffs collect against the judgment to be rendered herein against Queen City and American Mobility, the nondischargeable judgment against Blount shall be reduced commensurately. Accordingly, Queen City and American Mobility will be awarded a nondischargeable judgment against Blount for any amounts which are recovered by the plaintiffs against them.